455 S.E.2d 755

John BLACK

v.

COMMONWEALTH of Virginia.

Record No. 2288-93-4.

Court of Appeals of Virginia.

April 11, 1995.

Kenneth P. Troccoli (Richard C. Goemann, Office of the Public Defender, on briefs), for appellant.

Eugene Murphy, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: BARROW,* and KOONTZ, JJ., and DUFF, Senior Judge.

DUFF, Judge.

John Black was convicted of entering a banking house while armed with a deadly weapon with the intent to commit larceny in violation of Code § 18.2–93; of robbery in violation of Code § 18.2–58; and of use of a firearm during the commission of a robbery in violation of Code § 18.2–53.1. On appeal, he contends (1) the trial court erred in failing to grant his motion to strike on the basis that a savings and loan association is not a "banking house" within the meaning of Code § 18.2–93; (2) the trial court erred in granting a jury instruction that used the term "banking house" without defining the term; and (3) the trial judge abused his discretion in admitting testimony from three witnesses that they recognized appellant from a prior robbery he committed at the same savings and loan association. We disagree and affirm.

On February 20, 1993, at about noon, a robber entered Providence Savings and Loan Association in Alexandria. He approached Diana Perez, a teller, pulled out a gun and said, "Take the money out or I'll shoot." The robber also said, "Don't give me the dye pack this time." Manoj Pattni, the assistant manager, told Perez to comply with the robber's request. Perez placed the money on the counter. The robber put the money in his jacket pocket and left the bank. Pattni testified that the robber was in the bank for about forty-five seconds.

---

* Judge Barrow participated in the hearing and decision of this case prior to his death on March 28, 1995.

Lee Homsi, branch manager, was standing "five to seven feet" away from the robber and saw him demand and receive the money from Perez. Homsi then followed the robber outside of the bank and saw him enter a car. Later, Homsi, Pattni, Perez and another eyewitness, Yvette Terrell, gave similar descriptions of the robber to the police.

On March 5, 1993, Pattni, Perez, and Homsi viewed a photo spread. All three of the witnesses picked out appellant's picture as that of the robber. Perez positively identified appellant at the photo spread. Homsi and Pattni tentatively identified appellant at the photo spread. On April 1, 1993, Pattni, Perez, Homsi, and Terrell identified appellant in a live lineup.

Pattni, Perez, and Homsi testified that they recognized appellant from a previous robbery he had committed at the same savings and loan association in October of 1992.

## I. The "Banking House"

"[B]ecause [Code § 18.2–93] is penal in nature, it must be strictly construed, and any ambiguity or reasonable doubt as to its meaning must be resolved in [appellant]'s favor. 'This does not mean, however, that [appellant] is entitled to a favorable result based upon an unreasonably restrictive interpretation of the statute.'" *Mason v. Commonwealth,* 16 Va.App. 260, 262, 430 S.E.2d 543, 543–44 (1993) (citations omitted).

"When the wording of a statute is clear and unambiguous, its plain meaning is to be accepted without resort to rules of interpretation." *Commonwealth Dep't of Mines, Minerals & Energy v. May Bros., Inc.,* 11 Va.App. 115, 118, 396 S.E.2d 695, 696 (1990).

Code § 18.2–93 provides that "[i]f any person, armed with a deadly weapon, shall enter any banking house, . . . with intent to commit larceny . . . he shall be guilty of a Class 2 felony." The Code does not define "banking house." Appellant interprets the statute to apply only to institutions "exclusively

engaged in the banking business." In support of his position, appellant cites the Encyclopedia of Banking and Finance which defines "banking house" as "[t]he premises or building in which a bank conducts its business." *Encyclopedia of Banking and Finance* 90 (9th ed. 1991). He further argues that because a savings and loan association is not a "bank," it is not engaged in the banking business. Therefore, appellant concludes Providence Savings and Loan Association is not a "banking house" within the meaning of the statute.

> Recognizing the doctrine that robbery is a crime against the person, and not against a house or other inanimate thing, the Legislature passed the act of 1928 [now Code § 18.2–93]. . . .

> [T]he crime is complete when a person armed with a deadly weapon enters a banking house, in the day time or in the night time, with intent to commit larceny, etc.

*Falden v. Commonwealth,* 167 Va. 542, 546–47, 189 S.E. 326, 328 (1937). The purpose of Code § 18.2–93 is to establish as a felony the entry of "any banking house," while armed with a deadly weapon, with the intent to commit larceny.

"Banking" is defined, in part, as "receiving deposits payable on demand; [and] making loans of money on collateral security." *Black's Law Dictionary* 146 (6th ed. 1990). Lee Homsi testified that Providence Savings and Loan Association "functions ... in the form of a banking institution." Homsi further stated that the savings and loan association offers services such as checking accounts, savings accounts, and loans. Therefore, Providence Savings and Loan Association is in the "banking business" and the premises wherein this business is conducted is a "banking house" within the purview of Code § 18.2–93.

▪ Technical distinctions in the definitions of "bank" and "savings and loan association" provided for regulatory purposes, and found in the Banking and Finance title of the Code, do not bar inclusion of both types of financial institutions within the general descriptive term "banking house" as used in Code § 18.2–93. *See* Code §§ 6.1–4(1) and 6.1–194.2.

"We must determine the purpose and scope of the [statute] by construing the intent of our legislature from the language and 'the plain meaning of the words' used in the statute. Where the intent is clear from a plain reading of ... the statute, we must adhere to the pronouncement of our legislature." *Erickson–Dickson v. Erickson–Dickson,* 12 Va.App. 381, 386–87, 404 S.E.2d 388, 391 (1991) (citation omitted). To construe the statute as appellant suggests would require us to conclude that the intent of the legislature was to punish armed entry into a "bank," but not to punish armed entry into a "savings and loan association." Such an interpretation is contrary to the legislative intent and requires "an unreasonably restrictive interpretation of the statute."

In fact, this Court and the Supreme Court have upheld convictions under Code § 18.2–93 that involved the robbery of savings and loan associations. *Dorantes v. Commonwealth,* 222 Va. 383, 281 S.E.2d 823 (1981); *Hill v. Commonwealth,* 2 Va.App. 683, 347 S.E.2d 913 (1986). *Dorantes* involved the robbery of the Washington and Lee Savings and Loan Association. In its opinion, the Supreme Court specifically referred to the savings and loan association as a "banking house" although it reversed the conviction under Code § 18.2–93 on other grounds. The Court stated, "[n]ot excluded by the evidence in this case is the reasonable hypothesis the robbers left their weapons in the getaway car before entering the banking house involved in the instant robbery." *Dorantes,* 222 Va. at 386, 281 S.E.2d at 825.

We hold that the trial judge properly ruled that, for the purpose of Code § 18.2–93, the savings and loan association was a "banking house." Accordingly, the trial judge did not err in denying appellant's motion to strike the evidence.

## II. The Challenged Jury Instruction

Appellant objected to jury instruction number four, which stated the elements of the offense as defined by Code § 18.2–93. The instruction read, in part:

The defendant is charged with the crime of entering a banking house while armed with intent to commit larceny.

The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

(1) That the defendant entered a banking house while armed with a deadly weapon; and

(2) That he did so with intent to steal money, bonds, notes or other evidence of debt.

Appellant objected to the instruction because it contained the phrase "banking house." He argues that the term "bank" should have been used because a similar Virginia Model Jury Instruction uses the word "bank." Appellant also asserts that the jury was "left to speculate" on the definition of "banking house" because it was not instructed on the meaning of the phrase.

■ The challenged jury instruction stated the law clearly and related to issues which the evidence fairly raised. *See Darnell v. Commonwealth*, 6 Va.App. 485, 488, 370 S.E.2d 717, 719 (1988). The language of the instruction paralleled the language of the statute and the indictment. In accordance with the previous analysis, the plain meaning of the phrase "banking house" encompassed the business of the savings and loan association. Therefore, "banking house" was an appropriate expression to use in the jury instruction. Thus, the instruction withstands review on appeal.

### III. Prior Robbery Testimony

As a general rule, " 'proof tending to show an accused committed other crimes at other times is incompetent and inadmissible for the purpose of showing commission of the particular crime charged.' " *Jimmerson v. Commonwealth*, 13 Va.App. 388, 389–90, 411 S.E.2d 446, 447 (1991) (citation omitted). "However, such evidence may be admissible if it 'tends to prove any other relevant fact of the offense charged, and is otherwise admissible.' " *Lewis v. Commonwealth*, 8 Va.App. 574, 579, 383 S.E.2d 736, 739 (1989) (*en banc*) (citation omitted).

The accuracy of the savings and loan employees' identifications of appellant was challenged on cross-examination.

Three of those employees were then allowed to testify that they recognized appellant from another robbery at the same savings and loan association four months earlier. Manoj Pattni and Diana Perez also testified that appellant said, "Don't give me the dye pack *this time.*" (Emphasis added.)

The trial court instructed the jury that the evidence of the prior robbery, if the jury believed it, was admissible only for the purpose of assessing the accuracy of the witnesses' identifications of appellant as the person who committed the robbery charged. The trial judge further instructed the jury not to consider the evidence "as tending to show in any other way the Defendant's guilt of the offense for which he [was] on trial."

"Once a jury is instructed regarding the use or limitations placed upon specific evidence, they are presumed to follow such instructions." *Id.* at 580, 383 S.E.2d at 740. Nothing in the record indicates that the jury did not follow the trial judge's clear instructions.

The responsibility for balancing whether the probative value of the evidence of the prior robbery outweighed any incidental prejudice to appellant is left largely within the sound discretion of the trial judge. *Curtis v. Commonwealth,* 3 Va.App. 636, 638–39, 352 S.E.2d 536, 538 (1987). Identification was a central issue in the case. The testimony was probative in that it explained and confirmed the three witnesses' ability to identify appellant. Although the prior robbery occurred over four months prior to the February 20, 1993 robbery, all three of the eyewitnesses positively identified appellant as the criminal agent in the October, 1992 robbery. These circumstances add to the credibility of the identifications.

The trial judge also used prudence in receiving the evidence by issuing the cautionary instruction. We find no abuse of discretion in admitting evidence of the prior robbery for the limited purpose of assessing the accuracy of the witnesses' identifications of appellant. *See Rodriguez v. Commonwealth,* —— Va. ——, 454 S.E.2d 725 (1995).

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*