COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


ROBERT MICHAEL MORGAN

MEMORANDUM OPINION[*] BY
v.   Record No. 1590-98-3       JUDGE RUDOLPH BUMGARDNER, III
OCTOBER 5, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

John E. Falcone (Smith & Falcone, on briefs),
for appellant.

Richard B. Smith, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Robert M. Morgan appeals his conviction by a jury of unlawful wounding in violation of Code § 18.2-51.2. He argues the trial court erred (1) in failing to give a supplemental instruction defining "maim and disable," and (2) in finding the evidence sufficient to sustain the conviction. Finding no error, we affirm.

The trial court gave the jury the unlawful wounding instruction requested by the defendant. It stated:

Robert Morgan is charged with the crime of unlawfully causing bodily injury. The Commonwealth must prove beyond a reasonable

_____

* Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

doubt each of the following elements of that crime:

That Robert Morgan caused bodily injury to David Riley and that such bodily injury was with the intent to maim, disfigure, disable or kill David Riley, and that the act was done unlawfully. . . .

During deliberations, the jury advised the court, "we're interested in the legal definition as it relates to the words 'maim and disable.'" The trial court asked counsel how to respond. The defendant suggested that the court inform the jury that it should rely on the given instructions. The trial court indicated that it would tell the jury to apply their understanding of the "ordinary meaning" of the words. The defendant agreed to the trial court's suggestion. He stated, "the language suggested by the Court is good. The jury is simply to apply the ordinary meanings of the terms."

After reviewing legal authority, however, the defendant suggested that some reference to the "permanency" aspect of the terms would be appropriate. The Commonwealth disagreed. The trial court stated that unless both parties agreed to a new instruction, it would not provide one to the jury. The trial court explained its plan to tell the jury to apply the ordinary meaning of the terms. It asked if there was any comment or any improvements on the proposed response, and the defendant replied, "No, sir." The court then instructed the jury on using

the ordinary meaning of the words.  The defendant did not object.

"Maim" and "disable" do not have a distinct legal meaning. A trial court is not required to define unambiguous terms for the jury.  See Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111 (1996).  Words used in a statute are to be given their ordinary, everyday meaning, unless they are terms of art. See Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991); see also, Black v. Commonwealth, 20 Va. App. 186, 192, 455 S.E.2d 755, 758 (1995) (finding that the court did not err when it declined to define the statutory term "banking house").  The trial court's instruction to the jury that they should apply the ordinary meanings of those words was not error.

The defendant argues the court was required to instruct the jury on the "permanency" element of unlawful wounding.  However, he did not proffer the definition he wanted regarding the "permanency" requirement before trial, nor did he do so when the subject arose during the trial.  See Pavlick v. Commonwealth, 27 Va. App. 219, 230, 497 S.E.2d 920, 925 (1998) (en banc) (failure to proffer limiting instruction prevents this Court from determining whether trial court erred in failing to grant it) (citing Rule 5A:18).

Next, we consider whether the evidence was sufficient to support the conviction of unlawful wounding.  On appeal we view the evidence in the light most favorable to the Commonwealth and

-

grant to it all reasonable inferences fairly deducible therefrom.  See Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997).

So viewed the evidence established that on August 30, 1997, David Riley was stopped in the road preparing to turn left when the defendant sped past him on the right.  The defendant veered into a yard and came back onto the highway never slowing down. The defendant sped away.

Riley followed the defendant to get his license number and to report him to police.  Riley accelerated to catch up with the defendant.  The defendant's car came within sight approximately one mile down the road, and Riley saw him make an abrupt right hand turn.  When Riley turned, the defendant jammed on his brakes and immediately stopped.  The defendant, agitated and excited, exited his car and ran back towards Riley's truck.  The defendant twice demanded "what the f-ing problem was" and pointed his finger in Riley's face.

When Riley exited his truck, the defendant said, "I'll give you a problem" and punched Riley's face with his fist.  Riley's glasses went flying, and blood squirted out of his face.  Riley fell backwards as the defendant continued hitting him.  When Riley's back hit the ground, the defendant put his knee on Riley's chest, held Riley's hair at the top of his head, and continued hitting him about the face and head.  Each time Riley tried to get up, the defendant hit him until he was down.  The

-

defendant stopped only when someone yelled at him.  As the defendant left, he hollered, "I'll beat the pulp out of you again if you come around me."

Throughout the encounter, Riley never threw a punch.  He just tried to defend himself.  Riley had knots all over his head, a fractured nose, and a black eye.  He had a scar under his left eye from two cuts that required stitches, and two broken teeth that were removed.

The defendant testified that Riley pulled in front of him to turn left and came to an abrupt stop.  The defendant swerved to avoid hitting the truck because his brakes didn't work properly.  He stopped his car to talk to Riley.  As he approached the truck, Riley yelled at him.  When Riley exited the truck, the door hit the defendant in the chest.  The defendant tried to tell Riley that his brakes didn't work. However, when Riley hit him, the defendant hit him back.

The fact finder determines the credibility of the witnesses and the weight accorded their testimony and may accept or reject the testimony in whole or in part.  See Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). The fact finder is also entitled to disbelieve the self-serving testimony of the accused and to conclude that he is lying to conceal his guilt.  See Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc).

We conclude that the evidence of this severe, brutal beating is sufficient to support the conviction.  Accordingly, we affirm.

<u>Affirmed.</u>