COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


THOMAS ABRAM GRAY, SR.
                                              OPINION BY
v.    Record No. 2538-98-3          JUDGE SAM W. COLEMAN III
                                           OCTOBER 19, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                    George E. Honts, III, Judge

          Terry N. Grimes (King, Fulghum, Snead,
          Nixon & Grimes, P.C., on briefs), for
          appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General,
          on brief), for appellee.


     Thomas Abram Gray was convicted by a jury of conspiracy to

commit murder and attempted possession of an unregistered firearm

muffler or silencer.  On appeal, Gray contends that (1) Code

§ 18.2-308.6 prohibiting possession of an unregistered firearm

silencer is unconstitutionally vague; (2) the trial court erred by

refusing to define for the jury the terms "firearm muffler or

silencer" and "National Firearms Registration and Transfer Record"

(NFRTR), as he requested; (3) the trial court erred by refusing

his proffered jury instruction that withdrawal from a conspiracy

is a defense to the conspiracy charge; (4) the evidence was

insufficient to support the conviction for attempted possession of

an unregistered firearm muffler or silencer; and (5) the evidence

was insufficient to support the conviction for conspiracy to commit murder.  Finding no error, we affirm.

BACKGROUND

In 1994, Jim and Dorothea Martin were separated but not divorced.  In 1996, Gray became romantically involved with Dorothea Martin.

In 1997, Dorothea Martin showed Gray an advertisement for plans to build a firearm silencer and asked him if he could make such a device.  He responded, "I can make the thing probably." Dorothea Martin ordered the plans, which she later showed to Gray. When Gray saw the diagram, he told Dorothea Martin that boring a hole through an automobile fuel filter would accomplish the same purpose.  At Dorothea Martin's request, Gray had a machine shop drill a hole in a fuel filter and he threaded two of his .22 caliber rifle barrels to fit the fuel filter.

On September 19, 1997, Gray and Dorothea Martin discussed a recent confrontation that she had with her estranged husband, Jim Martin.  During the discussion, Gray told Dorothea Martin that he had nearly completed the silencer.  He stated, "If we fool enough with this we will get it under control.  Be something nice to have, wouldn't it?  Maybe give it to you and you can do with it as you wish.  How's that?"  She replied, "I hear you."

On November 15, 1997, Gray related his progress on the silencer to Dorothea Martin.  He said the device made the gun

"completely quiet, there is no sound at all.  The only thing you can hear is the trigger snap . . . and then you hear the bullet hit, plunk."  Dorothea Martin replied, "I want to hear that bullet hit.  Yee-ha."  Gray then said:  "You don't want to do it fast . . . .  This is something that's got a lot of pain and suffering in it.  Slowly, gradually.  The first one is dead center below the belt.  You've heard of getting shot in the ass . . . .  Well, if you hold it just a little bit under and shoot right through the crack you're going to hit two things a dangling."  Gray admitted at trial that in this conversation he was talking about shooting Jim Martin.

Dorothea Martin told Gray that she wanted Jim Martin dead before entry of their final divorce decree in order that she could obtain maximum financial benefit from his estate.  Also, Gray and Dorothea Martin discussed killing Jim Martin while he walked at night near the airport.  Dorothea Martin told Gray, "with a phone call and a plane ticket, [Jim] is history."

Sometime later, Dorothea Martin spurned Gray, after which Gray contacted Jim Martin to tell him what had occurred.  On one occasion, Gray showed the rifle and silencer to Jim Martin, stating, "I made this . . . [t]his was made for you . . . Jim, she wants you dead."  Gray told the police he took it "for granted [the silencing device] was for [Jim Martin]."

After Jim Martin contacted the police, Virginia State Police Agent Orebaugh obtained a search warrant for Gray's home. Orebaugh seized from Gray's home a homemade firearm silencer and two .22 caliber rifles. The rifles were threaded to fit the silencing device. On testing the device, Gray had found that although it reduced the noise from the gun, it never actually silenced the guns. Gray never applied for a permit to manufacture a firearm silencer nor did he attempt to register the device. Gray admitted that he knew unregistered silencers were illegal but added that because the device did not silence the firearm to the extent anticipated, he did not consider the device to be a silencer. Although the silencer never worked to his satisfaction, Gray admitted that the device was designed and intended to reduce the sound of a gunshot.

Over Gray's objection, Donald Harris, a Special Agent with the United States Treasury Department, testified regarding the NFRTR. Harris explained that the Secretary of the Treasury maintains a record of, among other things, the manufacture and sale of firearm silencers. Harris explained the process for obtaining a license to manufacture silencers and for obtaining a permit to purchase such a device.

Richard Van Roberts, a firearms and tool marks examiner with the Division of Forensic Science who testified as an expert,

explained the construction of a silencer and identified Gray's device as a silencer.

The defendant proffered four jury instructions which the trial court refused.  Instructions A, B, and C defined the terms "firearm silencer," "firearm muffler," and "National Firearm Registration and Transfer Record."  Instruction D stated that withdrawing from a conspiracy is a defense to the charge of conspiring to commit a crime.

## ANALYSIS

### Constitutionality of Code § 18.2-308.6

Gray contends the trial court erred by refusing to dismiss his indictment for violation of Code § 18.2-308.6.[1]  Gray argues that Code § 18.2-308.6 is unconstitutionally vague because it fails to define prohibited conduct with sufficient clarity to provide reasonably intelligent persons with fair notice of what is prohibited.  Specifically, Gray argues that the statute does not sufficiently define "firearm muffler," "firearm silencer," or "National Firearms Registration and Transfer Record," to enable a

---

[1] Code § 18.2-308.6 provides:

> It shall be unlawful for any person to possess any firearm muffler or firearm silencer which is not registered to him in the National Firearms Registration and Transfer Record.  A violation of this section shall be punishable as a Class 6 felony.

- 5 -

person to know whether his or her conduct violates the statute. We disagree.

When testing the constitutional validity of statutes, courts shall presume the statute to be valid. See Bennett v. Commonwealth, 8 Va. App. 228, 235, 380 S.E.2d 17, 21 (1989). Consequently, the burden to show the constitutional defect is on the challenger. See id. In reviewing a void-for-vagueness argument, courts employ a two pronged test. See Brewster v. Commonwealth, 23 Va. App. 354, 357, 477 S.E.2d 288, 289 (1996). First, the language of the statute must provide a person of average intelligence a reasonable opportunity to know what the law expects from him or her. See id. Second, the language must not encourage arbitrary and discriminatory selective enforcement of the statute. See id. Because Gray makes no claim that the prohibited conduct is protected by the First Amendment, he has standing to challenge the constitutionality of the law only as it applies to him under the facts of this case. See Coleman v. City of Richmond, 5 Va. App. 459, 463, 364 S.E.2d 239, 241-42 (1988).

We hold that the prohibition in Code § 18.2-308.6 against possessing unregistered "firearm silencers" and "firearm mufflers" is sufficient to place a citizen of average intelligence on notice that the statute forbids possessing all unregistered firearm silencers or mufflers, including those that are non-commercial or privately manufactured. Gray manufactured and intended the device

- 6 -

to be a firearms muffler or silencer.  He was familiar with firearms, knew what a silencer was, knew it was illegal to possess an unregistered silencer, and admitted he built the device for the purpose of silencing firearms.  The fact that Gray, or any citizen, might have had to inquire about how and where to register the silencer with the NFRTR does not render the statute unconstitutionally vague.  Accordingly, because Code § 18.2-308.6 is constitutional, the trial court did not err in denying Gray's motion to dismiss the indictment.

## Jury Instructions

Gray contends the trial court erred by refusing to give a jury instruction defining the terms "firearm muffler," "firearm silencer," and "National Firearms Registration and Transfer Record."  We disagree.

A trial court is not required to define unambiguous terms for the jury.  See Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111 (1996).  "A word in a statute is to be given its everyday, ordinary meaning, unless the word is a [term] of art."  Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991); see also, Black v. Commonwealth, 20 Va. App. 186, 192, 455 S.E.2d 755, 758 (1995) (finding that the court did not err when it declined to define the statutory term "banking house").

The Commonwealth introduced testimony through an expert witness explaining what a firearm silencer or muffler is and

explaining the NFRTR. As used in Code § 18.2-308.6, the terms that Gray asked the court to define are not legal terms, are not ambiguous, and did not require further definition. A firearm muffler or silencer is not a legal term or a term of art. Whether the device Gray had constructed qualified as a muffler or silencer was a factual question to be resolved by the jury. Similarly, the NFRTR is not something that might be open to differing interpretations or definitions. Moreover, the definition of the NFRTR was not material to the jury's deliberation. The evidence proved that Gray knew that unregistered silencers were illegal, that silencers had to be registered, that he had not registered the device he was constructing, and that he did not intend to register the device because he did not consider it to be a silencer. Accordingly, the trial court did not err in refusing the jury instruction.

Gray also contends the trial court erred by instructing the jury that "[w]ithdrawal from the agreement or change of mind is no defense to the crime of conspiracy." Instead, Gray tendered to the trial court a proposed jury instruction stating that withdrawal from an agreement to commit a crime is a valid defense to a conspiracy charge. The issue is whether Virginia recognizes withdrawal as a defense to conspiracy.

> The traditional rule here "is strict and inflexible: since the crime is complete with the agreement, no subsequent action can exonerate the conspirator of that crime."

> In those jurisdictions which have added by
> statute an overt act requirement, the
> defendant is not punishable as a member of
> the conspiracy only if he withdraws before
> the overt act has been committed.

2 Wayne R. Lafave, Substantive Criminal Law § 6.5, at 110-11 (1986) (quoting Model Penal Code § 5.03, Comment at 457 (1985)); see, 16 Am. Jur. 2d Conspiracy § 27 (1998); Developments in the Law -- Criminal Conspiracy, 72 Harv. L. Rev. 920, 957 (1959).

No Virginia decision has expressly addressed whether withdrawal is an affirmative defense to a conspiracy charge. However, the law is settled that the agreement to commit a crime in conjunction with the requisite intent constitutes the completed offense of conspiracy without the need to prove an overt act in furtherance of the conspiracy. See Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992). Therefore, a withdrawal and decision not to complete the crime after the parties have agreed to commit a crime has no bearing on the already completed conspiracy and cannot, therefore, be an affirmative defense.[2] Accordingly, the trial court did not err by rejecting Gray's tendered instruction or by giving the contrary

---

[2] We note, however, that a conspirator's withdrawal after entering the conspiracy may otherwise be relevant at trial. See e.g., Berger v. Commonwealth, 217 Va. 332, 334, 228 S.E.2d 559, 561 (1976) (stating that extrajudicial inculpatory declarations of a co-conspirator are inadmissible against a defendant if the declarations were made after the defendant properly withdrew from the conspiracy).

instruction that post-agreement withdrawal does not constitute a defense to a conspiracy charge.

### Sufficiency of the Evidence

When sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the Commonwealth and accord it all inferences reasonably deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).

Gray asserts that the evidence was insufficient to support a conviction under Code § 18.2-308.6 because he never possessed a functional silencer and because the statute does not require registration of a non-functioning and incomplete firearm silencer. We find the evidence sufficient.

"[A]n attempt is composed of two elements:  the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose." Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978) (citation omitted). "[T]he question of what constitutes an attempt is often intricate and difficult to determine, and . . . no general rule can be laid down which will serve as a test in all cases.  Each case must be determined on its own facts." Id. at 985, 243 S.E.2d at 215 (citations omitted).

The Commonwealth proved that Gray attempted to construct a working firearm silencer and that he had not registered it with the NFRTR. Additionally, on these facts the jury could conclude that Gray had no intention of registering the device when he completed it. Thus, the evidence was sufficient to prove beyond a reasonable doubt an intent to violate the statute and an overt act toward consummation of the crime. Although Gray never perfected the device, his intent and his efforts were sufficient to support a conviction for attempted possession of an unregistered silencer in violation of Code § 18.2-308.6. See e.g., Purdy v. Commonwealth, 16 Va. App. 209, 211-12, 429 S.E.2d 34, 36 (1993) (finding evidence sufficient to convict defendant for attempted possession of cocaine where defendant purchased wax made to resemble crack cocaine).

Gray also contends the evidence was insufficient to support a conviction of conspiracy to commit murder. We disagree. "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). As previously stated, the crime of conspiracy is complete when the parties agree to commit an offense; Virginia does not require proof of an overt act in furtherance of the conspiracy. See Stevens, 14 Va. App. at 241, 415 S.E.2d at 883.

The Commonwealth may prove the existence of a conspiratorial agreement by circumstantial evidence and need not prove an explicit agreement. See id. Furthermore, the Commonwealth may prove the specific intent to commit the underlying crime, which is the subject of the conspiracy, by circumstantial evidence. See Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).

> "Where it is shown that [two parties] by their acts pursued the same object, one performing one part and the other performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object."

Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d Conspiracy § 42 (1979)).

The evidence proved that Gray and Dorothea Martin discussed killing Jim Martin and that Gray attempted to construct a firearm silencer that he knew was intended for use in killing Jim Martin. Gray told Dorothea Martin that he would give her the silencer "to do with" as she wished. When Dorothea Martin expressed a desire to hear the bullet hit, Gray stated, "[y]ou don't want to do it fast . . . [t]his is something that's got a lot of pain and suffering in it." At trial, Gray admitted he was referring to shooting Jim Martin. From this evidence, the jury reasonably could have inferred that Gray intended to construct a silencer-equipped firearm which he contemplated Dorothea Martin

would use to murder or have Jim Martin murdered.  The jury was not bound by Gray's self-serving assertions that he never agreed or intended to kill Jim Martin.  See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.").  Gray's part of the agreement was to provide a silencer which Dorothea Martin would use to kill Jim Martin.

CONCLUSION

In conclusion, the language of Code § 18.2-308.6 is not unconstitutionally vague in its articulation of proscribed conduct.  Additionally, the trial court had no obligation to define the unambiguous terms, "firearm silencer," "firearm muffler," and "National Firearms Registration and Transfer Record."  Furthermore, the trial court did not err by instructing the jury that post-agreement withdrawal does not constitute a defense to the charge of conspiracy.  Finally, the evidence is sufficient to sustain the convictions for attempted possession of an unregistered firearm silencer and conspiracy to commit murder. Accordingly, we affirm Gray's convictions.

Affirmed.