Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Compton, S.J.

THOMAS ABRAM GRAY, SR.                    OPINION BY
                                  SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 992566                   November 3, 2000

COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA


Defendant Thomas Abram Gray, Sr., was found guilty by a jury in the Circuit Court of Botetourt County in July 1998 of conspiracy to murder one James M. Martin, Code §§ 18.2-22 and -32, and of attempted possession of an unregistered firearm muffler or silencer, Code §§ 18.2-308.6 and -26.  Judgment was entered upon the verdicts, and defendant was sentenced to three years' imprisonment for the conspiracy and to a fine of $2,500 for the other crime.

Upon defendant's appeal to the Court of Appeals of Virginia, the judgments of conviction were affirmed.  Gray v. Commonwealth, 30 Va. App. 725, 519 S.E.2d 825 (1999).

We awarded defendant this appeal to consider whether the Court of Appeals erred in its judgment regarding the sufficiency of the evidence to support the convictions; the constitutionality of Code § 18.2-308.6, the firearm muffler statute; and certain instructions tendered by the defendant but refused by the trial court.

Employing settled principles of appellate review, we shall recite the facts in the light most favorable to the Commonwealth, the prevailing party in the trial court.

James M. Martin and Dorothea Martin, both in their late forties, separated in March 1994 after almost 16 years of marriage. After the separation, she lived in Bedford County and was employed at the Troutville post office; he resided in Fincastle.

In October 1996, defendant, age 39, met Dorothea at the post office when he went there to obtain money orders in connection with his life insurance business. At the time, no final decree had been entered in the Martins' pending divorce suit.

In the proceedings, Martin had agreed to pay her $67,500. However, if he died before the divorce became final, she would receive his home (valued near $170,000), his half of his construction business (valued about $80,000), the proceeds of his $100,000 life insurance policy, and additional property he owned in Bedford County.

The defendant and Dorothea began a sexual relationship in December 1996. Dorothea's husband first met defendant in April 1997 and learned about the affair after defendant had contacted the Martins' teenage son "and discussed [defendant's] whole sex

life" with him.  Later, Martin observed defendant and Dorothea together at a local "Pizza Den."

In June 1997, Martin summoned defendant to testify at a divorce hearing, believing defendant would state that Dorothea was guilty of adultery.  Instead, upon Dorothea's promise to pay him $15,000, defendant lied about the relationship and denied having had sexual intercourse with her.  She reneged on her promise, and defendant wrote her a letter in August threatening to expose all her misconduct if she did not pay him the promised amount.

In September 1997, Dorothea was planning her husband's murder.  She showed defendant a magazine ad for a "blueprint" to make a firearm silencer that she desired to procure.  She ordered the diagram and, upon receipt, showed it to defendant, a former mechanic.  Upon review of the diagram, defendant told Dorothea, that "you don't need nothing like that," and stated that the same purpose could be accomplished, that is, reducing the sound of a firearm, by use of an automotive fuel filter and by "knock[ing] a hole through it and put[ting] it on a .22." Subsequently, while so enamored with Dorothea that he would do anything she asked, defendant bought such a fuel filter and fabricated a firearm silencer to fit two .22 caliber rifles that he owned.

The relationship between defendant and Dorothea became turbulent.  On February 20, 1998, defendant called Martin on the telephone telling him "that Dorothea was [a] no count tramp and there was some things that [Martin] should know and he had a tape he said would prove everything that he was telling [Martin] about her was the truth."  Defendant and Martin met later that day and defendant had Martin listen to an audio tape recording of conversations between defendant and Dorothea in which they discussed "their sex and telephone sex and all kinds of talk about [Martin] and just everything."  At that meeting, defendant told Martin that "she'd used [defendant], played him for a fool, played him for a sucker."

Defendant gave Martin the tape, and he met Dorothea the following night.  According to Martin, when he played the tape for her, "[s]he denied every word of it," although the sound of her voice on the recording was clear.

The evidence establishes a plan by Dorothea and defendant to have Martin murdered by an out-of-state assassin while Martin was following a routine of walking alone at night near the Roanoke airport.  During a discussion on February 22, 1998 at defendant's home between Martin and defendant that was recorded on tape by Martin with defendant's consent, defendant revealed the murder plot to Martin.  Defendant exhibited a rifle while "screwing a silencer on the end of it."  Defendant said, "'Jim,

4

this was made for you.'" Defendant stated, "'Dorothea ordered the plans and I made it.'" Continuing, defendant told Martin, " 'Jim, she wants you dead . . . she tells me that with a phone call and a plane ticket you're history.' " According to Martin, defendant "told me why he built it, he built it to kill me."

The next day, February 23, Martin contacted the Virginia State Police at the Salem office where he was interviewed by special agent Doug Orebaugh. Executing a search warrant at defendant's home on that day, Orebaugh seized the home-made silencer from defendant's tool box along with two .22 caliber rifles the barrels of which had been threaded to accept the silencer.

Orebaugh also seized from defendant nearly 100 audio tapes containing "a couple hundred hours" of recorded conversations, mainly between defendant and Dorothea involving so-called "telephone sex." These conversations had been taped because defendant's office telephone was voice activated. Many of the tapes that included conversations related to the murder plot were played for the jury.

The following colloquy between defendant and Dorothea illustrates the nature of many of the comments between the duo about the murder plot. During a conversation recorded on November 15, 1997, defendant described his efforts to muffle the sound of the rifle shot and to make the firing "completely

5

quiet." He stated, "The only thing you can hear is the trigger snap . . . going clunk. That's all you hear and then you hear the bullet hit, plunk." Dorothea responded, "I want to hear that bullet hit. Yee-ha." Defendant then said, "You don't want to do it fast . . . . This is something that's got a lot of pain and suffering in it. Slowly, gradually. The first one is dead center below the belt. You've heard of getting shot in the ass." At trial, defendant admitted he was referring in that conversation to Martin being shot.

Defendant testified that he had not agreed with Dorothea to kill Martin nor had he intended that Martin be killed. He stated that he made the silencer for his teenage son to use when hunting squirrels. When called to testify by defendant's counsel, Dorothea refused, invoking her constitutional privilege against self-incrimination.

In this appeal, defendant contends the Court of Appeals erred by affirming the trial court's failure to strike the evidence with respect to the charge of conspiracy to commit murder. Defendant argues the evidence was insufficient to support the conviction. We disagree.

A conspiracy is an agreement between two or more persons by some concerted action to commit an offense. Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982); Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327

6

(1937).  See Code § 18.2-22.  The crime may be proved by circumstantial evidence.  Indeed, because of the very nature of the offense, "it often may be established only by indirect and circumstantial evidence."  Floyd v. Commonwealth, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978).

In Virginia, the crime of conspiracy is complete when the parties agree to commit an offense.  Falden, 167 Va. at 544, 189 S.E. at 327.  No overt act in furtherance of the underlying crime is necessary.  Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992).

In the present case, the evidence is sufficient for a jury reasonably to infer from all the circumstances that defendant agreed with Dorothea to have Martin killed so that she could receive a financial windfall.  As part of the agreement, defendant was to make a firearm silencer that he contemplated Dorothea would use to accomplish the homicide, employing, in defendant's words, "some out of town muscle."  The jury was entitled to reject defendant's denials that he agreed to have Martin shot and his assertion that he attempted to make the silencer for his son's use.

Next, defendant contends the Court of Appeals erred in affirming the trial court's failure to strike the evidence with respect to the charge of attempted possession of a firearm

silencer in violation of Code § 18.2-308.6.  Defendant argues the evidence was insufficient to convict.

At the threshold of this issue, however, defendant contends the statute is unconstitutionally vague and the indictment should have been dismissed for that reason.  He argues the statute fails to define the prohibited conduct with sufficient clarity to provide reasonable persons with fair notice of what is prohibited.  We do not agree.

Code § 18.2-308.6 provides:

"It shall be unlawful for any person to possess any firearm muffler or firearm silencer which is not registered to him in the National Firearms Registration and Transfer Record.  A violation of this section shall be punishable as a Class 6 felony."

Defendant has no standing to mount a broad, general, facial statutory challenge because he does not contend his conduct was constitutionally protected nor is the First Amendment implicated.  Woodfin v. Commonwealth, 236 Va. 89, 92, 372 S.E.2d 377, 379 (1988), cert. denied, 490 U.S. 1009 (1989).  Thus, the narrow question is whether the statute is vague as applied to defendant's conduct in this case.

The rule applicable here, given the defendant's argument, is that a "penal statute is void for vagueness if it fails to give a person of ordinary intelligence notice that his contemplated conduct is forbidden by the statute . . . ."  Id.

8

In the context of this case, there is nothing uncertain or ambiguous about the statutory language making it "unlawful for any person to possess any firearm muffler or firearm silencer" that is not properly registered. The words "muffler" and "silencer" relating to firearms have commonly accepted meanings. A "muffler" is "any of various devices to deaden the noise of escaping gases or vapors; something that silences," and a "silencer" is a "device for small arms that permits the exit of the projectile but reduces the noise without materially impeding the escape of the exploding gases; a device for silencing or reducing noise." Webster's Third New International Dictionary 1483, 2117 (1993).

The statute in question plainly sets forth the conduct it proscribes, that is, possessing all unregistered firearm silencers or mufflers, including those privately manufactured. Thus, there was no basis to dismiss the indictment, and the Court of Appeals properly so ruled.

And, we reject defendant's contention that the evidence was insufficient to convict of the attempted possession of such a device. In a circular argument, defendant contends that "any 'attempted possession' of a firearm muffler or silencer as charged in the indictment did not violate the statute because there is no obligation to register a firearm until the weapon is actually possessed."

9

An attempt is composed of the intention to commit the crime, and the doing of some direct act towards its consummation that is more than mere preparation but falls short of execution of the ultimate purpose. Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978).

The evidence in this case establishes that defendant tried to construct a firearm silencer using an automotive fuel filter. Although the device that defendant made was not a perfect silencer, it functioned to reduce the sound of a rifle shot. Defendant intended to make an operational silencer, he possessed the imperfect device, and he had no plans to register what he had made. This is a classic case of an attempt to possess an unregistered firearm muffler or silencer because there was an intent to violate the statute accompanied by a direct act towards its consummation.

Next, claiming there was evidence he changed his mind after agreeing to participate in Martin's murder, defendant contends the Court of Appeals erred in approving the trial court's action in instructing the jury that "[w]ithdrawal from the agreement or change of mind is no defense to the crime of conspiracy." He also contends error was committed by the Court of Appeals in approving the trial court's refusal to give an instruction tendered by him stating that withdrawal from the agreement to

10

kill Martin or a change of mind by defendant is a defense to the charge of conspiracy.

We hold the Court of Appeals did not err in ruling that, in Virginia, unlike some other jurisdictions, withdrawal is not a defense to conspiracy. As we already have stated, citing Falden and Stevens, in Virginia the crime of conspiracy is complete when the parties agree to commit an offense, and no overt act in furtherance of the underlying crime is necessary. Therefore, as the Court of Appeals stated, no action subsequent to the formation of the agreement can exonerate the conspirator of that crime. Gray, 30 Va. App. at 733, 519 S.E.2d at 829.

Finally, we find no merit in defendant's contention that the Court of Appeals erred in affirming the trial court's refusal to give instructions defining certain terms in Code § 18.2-308.6, the firearm silencer statute. As we have stated, the statutory terms are unambiguous. A defendant is not entitled to jury instructions defining clear and unambiguous statutory terms. Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111, cert. denied, 519 U.S. 951 (1996).

Consequently, the judgment of the Court of Appeals will be

Affirmed.