COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


JOHN C. BERRY

MEMORANDUM OPINION* BY
v.     Record No. 2908-05-2           JUDGE RANDOLPH A. BEALES
MARCH 6, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
James F. D'Alton, Jr., Judge Designate

Steven D. Benjamin (Betty Layne DesPortes; Benjamin &
DesPortes, P.C., on briefs), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


John C. Berry (appellant) appeals from his conviction by bench trial of conspiracy to

commit a felony in violation of Code § 18.2-22.[1]  Appellant challenges the sufficiency of the

evidence.

STANDARD OF REVIEW

On appeal, we examine the evidence in the light most
favorable to the Commonwealth.  That principle requires us to
discard the evidence of the accused in conflict with that of the
Commonwealth and to regard as true all the credible evidence

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-22 reads, in pertinent part:

If any person shall conspire, confederate or combine with another,
either within or without this Commonwealth, to commit a felony
within this Commonwealth, or if he shall so conspire, confederate
or combine with another within this Commonwealth to commit a
felony either within or without this Commonwealth, he shall be
guilty of a felony . . . .

favorable to the Commonwealth and all fair inferences that may be drawn therefrom.

Guda v. Commonwealth, 42 Va. App. 453, 455, 592 S.E.2d 748, 749 (2004) (citation omitted).

BACKGROUND

Between 7:00 and 8:00 p.m. on December 31, 2004, appellant and his brother Joe Berry arrived at Splash Sports Bar and Grill in Prince George. Appellant's girlfriend, Kendall Jarratt, and Joe Berry's wife accompanied them. Shortly after midnight, appellant and Joe Berry became involved in an altercation with another patron of the bar, T.J. Ambroise.

Randy Donovan, Splash's cook, saw one of the brothers, who was wearing a dark shirt at the time, attack Ambroise.[2] After the first punch was thrown, the bouncers kicked both brothers and Ambroise out of the bar. Donovan stated that the bouncers "were pretty aggressive" and literally threw the men out of the bar. Donovan exited the bar through a side door in order to check on Ambroise, who Donovan knew because Ambroise had previously worked at Splash.

According to Donovan, the brothers "met up outside . . . stopped on the side of the building and embraced each other." Donovan testified that the brother who was wearing a tan shirt (Joe Berry) said, "We're going to shoot his ass"[3] and that the brother who was wearing a dark shirt (appellant) was "basically almost in tears." Donovan did not hear appellant say anything in response to his brother Joe's statement.

Shortly thereafter, Donovan saw the brother wearing a dark shirt (appellant) approach and point a cocked gun in the direction of both Ambroise and Donovan. Donovan heard

---

[2] At trial, witnesses identified the brothers, who are twins, according to the shirts they were wearing on the night in question. According to these witnesses, appellant was wearing a dark shirt that night while Joe Berry was wearing a tan shirt.

[3] On cross-examination, Donovan stated that Joe Berry told appellant, "I'm going to shoot their ass." With regard to any conflict between Donovan's recollections of the statement, we reiterate that we examine the facts in the light most favorable to the Commonwealth, as the party prevailing in the trial court.

appellant say, "Come fight me like a man" before lowering the gun and walking away. Thereafter, according to Donovan, Joe Berry walked up and fired three shots at Ambroise. Ambroise was struck in the head and immediately fell to the ground.

Appellant's girlfriend, Kendall Jarratt, explained that a bouncer kicked appellant in the chest and told him to leave while another bouncer threw Joe Berry against a brick wall. According to Jarratt, the brothers said nothing to each other as they walked toward their vehicle. She watched as appellant got his gun from the vehicle, walked back toward the bar, and, shortly thereafter, returned to the vehicle. Jarratt saw Joe Berry walk back toward the bar with his gun, and she then heard "about seven shots."

Detective Ross Bauschatz of the Prince George County Police Department investigated the shooting and went to appellant's apartment in the City of Petersburg at about 5:00 or 6:00 a.m. on the morning of January 1, 2005. Bauschatz said that appellant appeared groggy but was able to communicate with him. According to Bauschatz,

> [appellant] admitted to pointing [the gun], brandishing it, and then he lowered his weapon without firing it and went back to his car. . . . He was just using it as a deterrent, I guess. Talking trash. He said something to the effect of I could kill you with this, or something of that nature.

Appellant also told Bauschatz that he "had no intention of shooting anybody, no intention of firing the weapon."

The trial court found appellant guilty of conspiracy to commit a felony, noting:

> There is evidence that there is a statement[,] they're together when this statement is made, and they go to the car and get guns and come back. Although one claims and apparently he did not pull the trigger. But he is going back with him after this statement to do what they discussed.

This appeal followed.

ANALYSIS

Initially we note, "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Edwards v. Commonwealth, 41 Va. App. 752, 767-68, 589 S.E.2d 444, 451 (2003) (*en banc*). When considering the sufficiency of the evidence on appeal, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc)* (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Moreover, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

"'Conspiracy requires . . . (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective[,] either an unlawful act or a lawful act by unlawful means.'" Hix v. Commonwealth, 270 Va. 335, 347, 619 S.E.2d 80, 87 (2005) (quoting Wayne R. LaFave, Criminal Law § 12.2, at 621 (4th ed. 2003)). "[T]he crime of conspiracy is complete when the parties agree to commit an offense. No overt act in furtherance of the underlying crime is necessary." Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000) (citation omitted). "Proof of an explicit agreement is not required and oftentimes the prosecution must rely only on circumstantial evidence to establish the conspiracy." Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992).

Here, the trial court specifically found that both brothers were together when Joe Berry said to appellant, "We're going to shoot their ass." Although no evidence shows appellant made

- 4 -

any oral response to the statement, appellant immediately retrieved his gun from his vehicle and pointed it at Ambroise. Therefore, appellant, as demonstrated by his actions, agreed with his brother and intended to carry out the objective of the statement. Stated differently, and as described by the trial court, appellant "is going back with him after this statement to do what they discussed." Though appellant later said he never intended to shoot Ambroise and that he only meant to show him "something could happen," appellant's brandishing of the weapon only moments after the statement was made would allow a rational fact finder to reasonably conclude that he agreed with his brother's statement, planned to shoot Ambroise, but at the last minute changed his mind.

Appellant argues that the following principle of appellate review, which we articulated in Feigley v. Commonwealth, 16 Va. App. 717, 432 S.E.2d 520 (1993), applies to this matter: "once the conflicts in the evidence have been resolved and the evidence is equally susceptible to two or more constructions, one of which would support conspiracy and another which would not, the fact finder is not free arbitrarily to select that theory of conspiracy." 16 Va. App. at 724, 432 S.E.2d at 525. As the above quote from our holding in Feigley makes clear, that principle presupposes that the evidence is in fact susceptible to two *equal* constructions. That prerequisite is not satisfied here, as the evidence in this matter is more susceptible to the construction espoused by the trial court, i.e., that appellant, as demonstrated through his actions, agreed with and intended to carry out the consequences of his brother's statement. Therefore, we hold that the trial court, acting as a rational fact finder, could indeed have concluded that appellant conspired with his brother to shoot Ambroise. The fact that appellant himself ultimately decided not to shoot is not dispositive on the conviction for conspiracy, since evidence of an overt act in pursuit of the agreed-upon crime is not necessary to prove conspiracy. Gray, 260 Va. at 680, 537 S.E.2d at 865.

CONCLUSION

For the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed.</u>