UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, White and Senior Judge Humphreys*
Argued at Christiansburg, Virginia


JONATHAN LEBRON

v.      Record No. 1937-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION** BY
JUDGE KIMBERLEY SLAYTON WHITE
APRIL 9, 2024


### FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Martinsville convicted Jonathan

Lebron of robbery, conspiracy to commit robbery, armed burglary, conspiracy to commit armed

burglary, two counts of using a firearm in the commission of a felony, and two counts of conspiracy

to use a firearm in the commission of a felony, in violation of Code §§ 18.2-58, 18.2-22, 18.2-90,

and 18.2-53.1.  Lebron asserts that the trial court erred in finding the evidence sufficient to support

his convictions and in denying his motion to exclude witness testimony for a discovery violation.

For the following reasons, we affirm the trial court's judgment.

---

* Senior Judge Humphreys participated in the hearing and decision of this case prior to
the effective date of his retirement on December 31, 2023.  On April 1, 2024, he was designated
as a senior judge.

** This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Zachery Conner met Rachel Handy in 2019, and the two became close friends. From 2019 until 2021, Conner and Jonathan Lebron lived together. At the time of the crimes, Handy and Lebron shared an apartment and Conner lived with his uncle elsewhere. Conner met Joshlyn Hairston, the victim, once when she visited the apartment to see Handy.

On July 5, 2019, Conner walked to visit Handy and Lebron at their apartment. While there, the three of them discussed the fact that Hairston owed money to Handy. Conner testified that "[t]hey . . . asked if I wanted to make some money." He stated that neither Lebron nor Handy told him how initially. Later, however, Handy told Conner that if he would help her get money from Hairston that she would give him half of what they recovered. This conversation took place in the bedroom. While Handy and Conner spoke in the bedroom, Lebron was in the living room. After Handy and Conner spoke about taking Hairston's money, Lebron entered the bedroom. Conner testified that Lebron "didn't really speak too much about" the plan when he came into the bedroom; when Handy told him they were going to Hairston's house, Lebron left with Handy and Conner.

Handy, Conner, and Lebron entered Handy's white Chevrolet SUV for the trip to Hairston's house. Lebron drove, Handy sat in the front passenger seat, and Conner sat in the back behind Lebron. Once inside the vehicle, Handy told Conner that a Glock style BB gun was

- 2 -

in the pocket behind the driver's seat and Conner retrieved it. During the 15-minute drive to Hairston's residence, Handy instructed Conner "where everything was" that they were going to get. Handy directed Conner to where some old pills and baggies of cocaine would be at the residence and told him to take them. When Lebron passed Hairston's house, Handy pointed the location of the house out to Conner. Lebron then dropped Conner off two blocks away from Hairston's residence. Lebron told Conner he would wait at a nearby ballfield park.

It took Conner about five minutes to walk to Hairston's house. Before Conner entered Hairston's home, Handy called and texted Hairston about money. Hairston did not reply to the text nor answer the call. Conner knocked on Hairston's door; when Hairston answered, he told her his car had overheated and asked for paper towels and a bottle of water. After Hairston returned with the water, Conner entered the residence, with the gun in his waistband, and demanded the money she owed Handy. Hairston directed him to the nightstand beside her bed, where he located a bag, snatched it, and fled through the front door. Hairston called Handy while Conner was in the house, asking Handy why Conner was there with a gun to her head asking for money she allegedly owed Handy.

Once Conner grabbed the bag, he ran to the ballfield, reentered the Chevrolet, and instructed Lebron to take the highway rather than drive back through the city. They stopped at an Auto Zone to get rid of Hairston's bag. On the way back to the apartment, Handy and Conner discussed the division of what had been taken from Hairston. Handy gave Conner half of everything that was in the bag. Conner received some pills, a gram of cocaine, and $50 in cash. Conner testified that Lebron remained silent during the return trip.[1]

---

[1] Conner admitted that while he initially denied any involvement in the offenses and told Lieutenant Peters varying stories, he pleaded guilty to the charges arising out of this incident and was awaiting sentencing.

Police Lieutenant Ben Peters was on patrol near Hairston's residence when he encountered Hairston; she reported the crime. Lieutenant Peters also observed a male later identified as Conner running from the area of her driveway carrying a bag. After speaking with Hairston and reviewing his dashcam, Lieutenant Peters was on the lookout for a white SUV. After 40 minutes, Lieutenant Peters located the vehicle outside Handy's apartment and observed Handy in the vehicle. After speaking with Handy and Hairston, Lebron became a person of interest in Lieutenant Peters' investigation. Lieutenant Peters found Lebron at another apartment in the same building that Lebron and Handy lived in. Lieutenant Peters and another officer entered that apartment, announced themselves, and located Lebron hiding in a back bedroom "laying on his back, hands in by his side, on the floor, tucked up against the bed."

On May 2, 2022, Lebron was indicted in the Circuit Court of the City of Martinsville for robbery, conspiracy to commit robbery, armed burglary, conspiracy to commit armed burglary, the use of a firearm in the commission of robbery, the use of a firearm in the commission of burglary, conspiracy to use a firearm in the commission of robbery, and conspiracy to use a firearm in the commission of burglary.

On the morning of the jury trial, Lebron asked the trial court to exclude the testimony from all Commonwealth witnesses, except for Hairston, because the Commonwealth had failed to provide Lebron with a list of witnesses it planned to call in its case-in-chief. In response, the Commonwealth represented that it had emailed a list of the witnesses to defense counsel. In addition, the Commonwealth indicated that the witness list was contained in the defendant's file maintained in the Commonwealth's office and was available for review by defense counsel. The Commonwealth confirmed that the list was filed prior to defense counsel's last review of the file. Finally, the Commonwealth pointed to the same witness list made a part of the trial court's file.

The trial court denied the motion to exclude the witnesses because "it appears [a written list of witnesses that includes names, and if known, addresses] was available to the Defense in the file."

After the Commonwealth rested its case, Lebron moved to strike the evidence arguing that the evidence was insufficient to prove he participated in the offenses or conspired to commit the crimes. The trial court denied the motion to strike. The jury convicted Lebron of all the offenses for which he was on trial. Lebron was sentenced to 126 years in prison with 110 years suspended. This appeal followed.

## ANALYSIS

### I. Conspiracy

Lebron argues that the Commonwealth failed to prove Lebron entered into an agreement to commit the offenses and had the intent to commit the offenses. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Conspiracy requires a shared intent and joint action." *Charity v. Commonwealth*, 49 Va. App. 581, 585-86 (2007) (quoting *Hix v. Commonwealth*, 270 Va. 335, 347 (2005)). "Conspiracy requires . . . (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective[,] either an unlawful act or a lawful act by unlawful means." *Id.* at 586 (alterations in original) (quoting *Hix*, 270 Va. at 347). "[T]he crime of conspiracy is complete when the parties agree to commit an offense. . . . No overt act in furtherance of the underlying crime is necessary." *Id.* (quoting *Gray v. Commonwealth*, 260 Va. 675, 680 (2000)). "[A] conspiracy may be inferred by actions alone." *Id.* at 587. "[B]ecause of the very nature of the offense, '[a conspiracy] often may be established only by indirect and circumstantial evidence.'" *Gray*, 260 Va. at 680 (quoting *Floyd v. Commonwealth*, 219 Va. 575, 580 (1978)).

> [W]hen "it has been shown that the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [factfinder] [is] justified in concluding that they were engaged in a conspiracy to effect that object.'"

*Charity*, 49 Va. App. at 586 (quoting *Brown v. Commonwealth*, 10 Va. App. 73, 78 (1990)).

"Robbery is 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" *Pena Pinedo v. Commonwealth*, 300 Va. 116, 122 (2021) (quoting *Butts v. Commonwealth*, 145 Va. 800, 811 (1926)). The law prohibits any person from breaking and entering the dwelling house of another with intent to commit robbery. Code § 18.2-90. And, "[t]he legislature imposes an enhanced penalty 'if the person was armed with a deadly weapon at the time of such entry.'" *Choon Poong Lee v. Commonwealth*, 68 Va. App. 313, 315 (2017) (quoting Code § 18.2-91). It is "unlawful for any person to use or attempt to use any . . . firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery, carjacking, [or]

- 6 -

burglary . . . ." Code § 18.2-53.1.  Thus, in order to prove that a conspiracy occurred, the evidence must show that Lebron formed an agreement and possessed the requisite intent for Conner to enter Hairston's house armed in order to take personal property from her person or in her presence against her will by violence or intimidation.  *See Charity*, 49 Va. App. at 586.

Lebron argues that there is no evidence that he was part of an agreement between Handy and Conner to commit the crimes against Hairston, was even aware of the agreement, or shared the intent to commit the crimes in the agreement.  Since Lebron was not in the bedroom with Handy and Conner, Lebron emphasizes that he was not present when the plan was devised between Handy and Conner.  Further, since Lebron allegedly did not speak in the car after Handy audibly explained what Conner should do at Hairston's and allegedly did not comment after Handy pointed out the gun, Lebron argues that there is no evidence that Lebron was aware of the gun.

"While no single piece of evidence may be sufficient," here, a reasonable factfinder could infer from actions by Lebron in furtherance of the offenses that Lebron was already aware of the plan, agreed to it, and, therefore, his presence for the communication of the plan to Conner was unnecessary to meet the burden of proof.  *See Hudson*, 265 Va. at 514.

While Lebron was not present for the conversation between Conner and Handy about splitting up the proceeds of the robbery, he participated in the conversation about Handy's claim that Hairston owed her money.  In addition, Lebron participated in the conversation by initially asking Conner if he wanted to make some money.  Lebron drove the vehicle and was present while Handy told Conner where to find pills and cocaine and directed Conner to the Glock style BB gun in the pocket behind the driver's seat.  Lebron dropped Conner off two blocks from Hairston's house and waited at the ballpark.  He later drove away from the crime scene upon Conner's return and continued driving while Handy searched Hairston's bag, Handy and Conner

- 7 -

discussed the contents, and Handy gave Conner his share of the proceeds. Although Lebron apparently never said a word, the record bears no indication that Lebron was surprised or indignant about what Handy and Conner did, and his efforts to conceal himself from police support a reasonable inference that he was an active participant.

At oral argument, Lebron's counsel conceded that Lebron stopping the vehicle a few blocks away from Hairston's house, waiting for Conner to return to the car, and later hiding under a bed are all suspicious behavior. We agree with counsel and find the suspicious behavior to be part of the circumstantial evidence from which conspiracy can be inferred. *See Gray*, 260 Va. at 680.

The facts and circumstances, viewed in totality and with all reasonable inferences drawn, sufficiently proved that Lebron agreed with Handy and Conner to drive to Hairston's house to take the money she owed Handy by force and that he was at the scene, encouraging Conner's actions and assisting in the escape. The evidence was therefore sufficient for the jury to find, beyond a reasonable doubt, that the elements of conspiracy had been established.

## II. Principal in the Second Degree

Lebron argues the evidence was insufficient to prove that he acted as a principal in the second degree. "A principal in the first degree is the actual perpetrator of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372 (1967)). "A principal in the second degree is . . . not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." *Rollston v. Commonwealth*, 11 Va. App. 535, 539 (1991) (quoting *Brown v. Commonwealth*, 130 Va. 733, 736 (1921)). To prove "a defendant guilty as a principal in the second degree, the Commonwealth must establish that the defendant procured, encouraged, countenanced, or approved the criminal act." *McMorris v. Commonwealth*, 276 Va. 500, 505 (2008). Indeed, "a

defendant is guilty as a principal in the second degree if he is guilty of some overt act done knowingly in furtherance of the commission of the crime, or if he shared in the criminal intent of the principal committing the crime." *Id.*

As with the crime of conspiracy, "[t]he status of the accused as a principal in the second degree may be established by any combination of circumstantial evidence or direct evidence." *Brickhouse v. Commonwealth*, 276 Va. 682, 687 (2008). "Circumstantial evidence [presented during the course of the trial] is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Salcedo v. Commonwealth*, 58 Va. App. 525, 535 (2011) (alteration in original) (quoting *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011)). In other words, "the Commonwealth has the burden of proof beyond a reasonable doubt." *Hudson*, 265 Va. at 513. "[T]he factfinder determines which reasonable inferences should be drawn from the evidence . . . ." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,'" subject to "'revers[al] on appeal only if plainly wrong,'" like any other factual finding. *Young v. Commonwealth*, 70 Va. App. 646, 654 (2019) (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)).

Lebron argues the evidence did not establish that he participated as a principal in the second degree for any of the crimes because 1) Lebron did not share the intent to burglarize or rob the victim or to use a firearm and 2) Lebron did not commit any overt act in furtherance of the crimes. Lebron argues that the Commonwealth failed to prove that Lebron agreed to break in Hairston's house, rob her, and use a firearm while committing those two crimes because "mere presence and consent will not suffice. . . . The defendant's conduct must consist of 'inciting, encouraging, advising or assisting in the [crime].'" *Rollston*, 11 Va. App. at 539 (quoting *Frye v.*

*Commonwealth*, 231 Va. 370, 389 (1983)). Lebron argues that because he did not know what Handy and Conner were planning, driving to the area where Hairston lived is not a knowingly overt act in furtherance of the crimes.

As Lebron correctly notes, "[m]ere presence during the commission of a crime and subsequent flight do not constitute sufficient evidence to convict a person as a principal in the second degree." *Moehring v. Commonwealth*, 223 Va. 564, 567 (1982). "The Commonwealth must prove that the defendant consented to the felonious purpose and the defendant contributed to its execution." *Brickhouse*, 276 Va. at 686 (quoting *McMorris*, 276 Va. at 505). That said, "[e]very person who is present at the commission of a [crime], encouraging or inciting . . . by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal." *Dunn v. Commonwealth*, 52 Va. App. 611, 617 (2008) (second alteration in original) (quoting *Foster v. Commonwealth*, 179 Va. 96, 99 (1942)).

This Court finds that, from the proven facts and circumstances presented at trial, a reasonable factfinder could conclude that Lebron acted as a principal in the second degree in the commission of the offenses. In affirming the trial court's denial of the motions to strike and motion to set aside the verdict, we emphasize that Lebron's actions demonstrated that he "countenance[d and] approve[d]" of the robbery, burglary, and use of a firearm in the robbery and burglary. *Id.* Lebron "aid[ed] and abet[ted] the actual perpetrator in the commission of the crime." *See Pugliese v. Commonwealth*, 16 Va. App. 82, 94 (1993). Handy, Conner, and Lebron had initial discussions about Hairston owing Handy money, and Handy and Lebron asked if Conner wanted to make money. Lebron drove two blocks past the Hairston residence. During the drive, Lebron was present during discussions about the gun and kept driving to the crime scene as Handy and Conner went over the details of the crime. Finally, Lebron waited in the get-

away-car for Conner and the three fled the scene together, with Lebron driving, the whole time "doing nothing to discourage [the crimes]." *See id*.

### III. Motion to Exclude Witnesses

Lebron also contends on appeal that the trial court abused its discretion in denying his motion to exclude the Commonwealth's witnesses due to a discovery violation. Bound by our standard of review, we affirm the trial court.

"On appeal, this Court reviews a claim that the trial court erred in the manner in which it oversaw the parties' discovery pursuant to the Rules of the Supreme Court of Virginia under an abuse of discretion standard." *Harvey v. Commonwealth*, 76 Va. App. 436, 472 (2023). "An abuse of discretion has occurred only when 'reasonable jurists could not differ' in their assessment that an erroneous result was reached." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

"'We review a trial court's factfinding "with the highest degree of appellate deference."'" *Vera v. Commonwealth*, 77 Va. App. 271, 278 (2023) (quoting *Laney v. Commonwealth*, 76 Va. App. 155, 164-65 (2022)). "Factual findings must be affirmed unless they are plainly wrong or without evidence to support them." *Laney*, 76 Va. App. at 165.

The record indicates that after the jury was seated but before the presentation of evidence, Lebron moved the trial court to exclude the testimony of all the Commonwealth's witnesses with the exception of Hairston's. Lebron argued that he did not receive the names and addresses of the witnesses before trial in violation of the court's discovery order. The Commonwealth responded that it had an open file policy, that Lebron's counsel had reviewed the file on July 25, 2022, that the witness list was in the file, and that the Commonwealth's office provided photocopying services to all counsel. The Commonwealth produced a list of witnesses and stated that the list was also emailed to counsel before trial. Lebron responded that he reviewed the file but did not remember seeing the witness list. He further argued that, in any case, the list referred to by the

- 11 -

Commonwealth did not provide the unknown addresses of many of the witnesses, and he maintained that, notwithstanding his review of the file, the list was not provided to him.

The trial court found that the list was in the file when Lebron reviewed it and concluded, "[t]hat is in essence the functional equivalent of notification." The trial court denied Lebron's motion to exclude the witnesses.

On brief, Lebron alleges prejudice because he was preparing by "making estimates based on what [he] think[s] will happen." While Lebron admits that counsel viewed the Commonwealth's case file via the prosecutor's open file policy, Lebron argues that the witness list in the file was deficient because it did not contain addresses, and that even so, his counsel did not recollect the list having been in the file at all. Lebron also argues that "neither filing the list with the clerk's office nor hoping the subpoena returns were in the file satisfy the Commonwealth's obligations under Rule 3A:11(b)(5) or the standing order."

Our review of the record supports the trial court's finding that the Commonwealth complied with its discovery obligations. The Commonwealth explained that it had an open file policy for discovery, that Lebron's counsel visited its office on July 25, 2022, to review the file in its entirety, that the list of witnesses was in the file, that the witness subpoenas, dated June 14 and 24, 2022, were in the file, that it offered free copying services, and that it had sent Lebron a witness list via email before trial. Accepted as true, those assertions supported the trial court's finding that the Commonwealth's actions were "the functional equivalent of notification" under the discovery order. As such, the trial court's finding that there was no discovery violation was not an abuse of discretion.

CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in finding the evidence sufficient to support Lebron's convictions for robbery, armed burglary, use of a firearm in the commission of those offenses, and conspiracy. We also find that the trial court did not abuse its discretion in refusing to exclude the witnesses due to a discovery violation. The judgment of the trial court is affirmed.

*Affirmed.*