Richmond

WINFIELD SCHINDEL

v.

COMMONWEALTH OF VIRGINIA

March 2, 1979.

Record No. 780789.

Present: All the Justices.

*Daniel J. Travostino (Doherty, Sheridan, Grimaldi & Shevlin,* on brief), for appellant.

*Richard B. Smith, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

PER CURIAM.

Winfield Schindel was convicted by a jury of possession of dilaudid, a Schedule II controlled substance, with intent to distribute and, by final judgment entered March 17, 1978, was sentenced to serve five years in the penitentiary. We granted a writ of error to consider defendant's claim that the trial court committed reversible error in admitting hearsay testimony and in refusing defendant's instruction on accomodation distribution.

We consider the evidence in the light most favorable to the Commonwealth. James Weston, arrested on a narcotics charge, agreed to cooperate with the police in their investigation of drug traffic in Fairfax County. Weston approached defendant in a corridor of the courthouse and inquired if he knew where he could buy heroin or dilaudid. Defendant told him he could get a prescription from a doctor, Dr. Salama, who was present in the courthouse, but "it would cost him a hundred dollars." Defendant asked Weston to "loan" him $100 to pay Salama for the prescription and a bill he owed for earlier treatments. Weston refused but, hoping to "help" his own case, left the courthouse and contacted Detective Guy Morgan.

Morgan gave Weston six marked twenty-dollar bills, five of which Weston handed to defendant. Defendant passed the five bills to Salama who wrote a prescription for dilaudid in defendant's name. Defendant and Weston drove to a nearby pharmacy, followed in another car by Morgan. The cost of filling the prescription was $3.45. Weston understood that he was to get several pills with a "street value of approximately a hundred dollars." Sitting in

the car with Weston, defendant poured the pills into his hand and showed them to Weston. Weston testified that "[h]e was starting to pass me two or three pills. I had my hand out . . . " At this point, the detective reached into the car and, as defendant made a motion toward his mouth, grabbed his hand and told him not to attempt to swallow the pills.

On cross-examination, Weston acknowledged the conversation about a loan and agreed that defendant had never expressly "told" him he would get some of the drugs. He testified, however, that "it was an understanding . . . he would get some, I would get some; I thought I was going to get the major portion." Throughout his testimony, defendant maintained that the transaction was nothing but a loan; that the prescription was intended solely to treat his own health problem; and that Weston "wasn't to get any of those pills."

Defendant's hearsay objection was addressed to the following portion of Detective Morgan's testimony:

> A. The conversation between Weston and I was about Weston was to receive or to give one hundred dollars to an individual known as Windy Schindel. For this one hundred dollars Schindel was to receive a prescription from a Dr. Salama and the prescription was for thirty dilaudid tablets.

Defendant argues that Morgan was reciting what Weston had told him, and that in doing so, he "was trying to make out a prima facie case of intent to distribute, where Weston had failed to do so". Defendant overlooks the plain import of the following extract from Weston's testimony:

> A. I approached Mr. Schindel in a friendly manner and I asked him if he knew where I could purchase any particular type drugs, heroin or dilaudid.
>
> . . . .
>
> Q. What, if anything, did Mr. Schindel say in response to that?

A. He said yes, he knew where he could get some dilaudid. And he stated that there was a doctor in the Courthouse that he could give a certain amount of money to and get a prescription.

. . . .

Q. Was there any mention of money at that time?

A. There was mention of Mr. Schindel told me he'd need a hundred dollars to get the prescription from the doctor in the Courthouse.

Q. What, if any, understanding was there between you and Mr. Schindel in regard to the one hundred dollars?

A. Basically that the prescription would be mine. Is that what you're asking?

. . . .

Q. What, if anything, was Mr. Schindel to get for this transaction?

A. A few pills, dilaudids.

Thus, Weston's testimony in court proves the essence of the content of his extra-judicial declaration. In further verification of the content of that declaration, Morgan later testified that he "advised Weston . . . the way we would have to handle the case" and outlined to him the plan for paying the money, obtaining the prescription, and getting "a certain amount of the dilaudid" into Weston's hands. Defendant concedes that this portion of Morgan's testimony was competent. Moreover, while defendant denies any intent to give Weston any of the pills, his own testimony corroborates the factual details of Weston's declaration to Morgan.

■ Even though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial declaration is clearly established by other competent evidence. *Facchina* v. *Richardson and Rains*, 213 Va. 440, 443, 192 S.E.2d 791, 794 (1972). Applying that rule and considering all the evidence properly before the jury, we hold that any error in admitting the challenged testimony was harmless.

■ Defendant offered the following instruction:

> If you believe from the evidence that the defendant *distributed* dilaudid only as an accommodation to Joseph Weston and not with intent to profit thereby nor to induce the recipient to use or become addicted to or dependent upon such drug, then you shall find the defendant guilty and fix his punishment at a maximum of one (1) year in jail or a One Thousand Dollar fine. (emphasis added).*

Refusing the instruction, the trial court said, "He is not charged with distribution; he is charged with possession with intent to distribute." Defendant voiced no objection to the court's ruling or the reason underlying it.

Where there is sufficient evidence to support a requested instruction defining the offense of possession with intent to make an accomodation distribution, the request should be granted. Here, defendant made no such request and identified no evidence in support of such an instruction. Under these circumstances, we find no error in the trial court's ruling, and the judgment will be affirmed.

*Affirmed.*

---

* The penalty for conviction of possession with intent to make an accommodation distribution of dilaudid, a Class 5 felony, Code § 18.2-248(a), is "a term of imprisonment of not less than one year nor more than ten years, or . . . confinement in jail for not more than twelve months and a fine of not more than one thousand dollars, either or both." Code § 18.2-10(e).