COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia


MONSERRATE SEIS

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1619-06-3              CHIEF JUDGE WALTER S. FELTON, JR.
                                                        NOVEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
James V. Lane, Judge

W. Andrew Harding (Eldridge, Elledge & Harding PLC, on brief),
for appellant.

Richard B. Smith, Special Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Monserrate Seis (appellant) was convicted following a jury trial of burglary in violation of

Code § 18.2-91, grand larceny in violation of Code § 18.2-95, two charges of conspiracy to

commit burglary in violation of Code § 18.2-22, and two charges of conspiracy to commit grand

larceny in violation of Code § 18.2-22.  Appellant contends that the trial court erred in joining

together multiple offenses for a single trial, arguing that the joined offenses were not

"connected," based on the same act or transaction, part of a "common scheme," or conducted in

a distinctive manner.  He also contends the trial court erred in failing to grant a mistrial after the

Commonwealth referred to his involvement in offenses other than those on trial.  He additionally

contends that the trial court erred in admitting hearsay evidence connecting appellant to the car

witnesses identified as being used in the commission of the offenses.  Finally, appellant contends

that the evidence was insufficient to support his convictions of burglary, conspiracy to commit

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

burglary, and conspiracy to commit grand larceny. For the following reasons, we affirm appellant's convictions.

## I. BACKGROUND

Around 2:30 p.m. on March 29, 2005, Jeremy Paz, a sixteen-year-old resident of Grassy Creek Trailer Park (Grassy Creek), was visiting a friend, Jiro Mendez, who also resided in Grassy Creek. Paz saw appellant and another man removing items from Javier Miramontes' home and placing the items into a white Oldsmobile.[1] Paz and Mendez hastened to the office of the Grassy Creek property manager, Lisa Bryant, and told her what they had observed. Bryant called 911, explained what Paz and Mendez told her they saw at Miramontes' house, and provided the dispatcher with a description and license plate number of the car Paz had given her.

Deputy Larry Michael of the Rockingham County Sheriff's Department responded to Bryant's call. Using the information he received from Bryant, Deputy Michael issued a "be on the lookout" for a white Oldsmobile bearing the license plate number Bryant provided to him. Deputy Michael learned from the Department of Motor Vehicles (DMV) that the car was registered to Mirabelle Bramble, the mother of appellant's girlfriend, Elizabeth Olivencia, and with whom appellant and Olivencia resided.

Shortly before appellant and a companion were seen taking items from Miramontes' home, they knocked on the front door of Grassy Creek resident Young Menard. Menard answered the door and saw a white car in her driveway. Appellant asked to speak with someone whom Menard did not know. A second man "was standing there looking at the other side [of the house away from the door]." When informed that the person did not live there, appellant and his companion left. Emilia Silva, another resident of Grassy Creek, experienced a similar encounter

---

[1] Paz recognized appellant as a person with whom he had previously played basketball at a local park.

the same day.[2] Although Silva was unable to identify the individuals who knocked on her door, she confirmed that two men stood outside her door and that one man asked to speak with someone she did not know.

The following day at a local park Paz saw appellant, as well as the white Oldsmobile he observed the previous day at Miramontes' and Menard's residences. Sheriff's deputies were notified of appellant's presence at the park and arrived within a few minutes. Appellant left the park on foot immediately after the deputies arrived.

A grand jury returned forty-six indictments against appellant, charging multiple burglaries, larcenies, and attempts to commit, and conspiracies to commit, each of those crimes.[3] The trial court joined all the charges against appellant and Raul Guzman, arising out of the March 29, 2005 events at Grassy Creek for trial.[4] In October 2005, a jury convicted appellant of burglary, grand larceny, two charges of conspiracy to commit burglary, and two charges of conspiracy to commit grand larceny. This appeal followed.

## II. ANALYSIS

### A. Joinder of Offenses

Appellant contends the trial court abused its discretion in joining the offenses arising out of the events at Grassy Creek on March 29, 2005 for trial. He contends joinder was inappropriate because "[a]ny residential burglary will have similarities," and the offenses at Grassy Creek were neither "connected," nor constituted part of a "common scheme" as required

---

[2] Silva and Miramontes are next-door neighbors.

[3] The grand jury also returned thirty-three indictments against Raul Guzman in connection with the same offenses.

[4] The indictments against Guzman arising out of the Grassy Creek incidents on March 29, 2005, were dismissed when witnesses at trial were unable to identify him as a perpetrator of those offenses.

by Rule 3A:6. The Commonwealth contends that appellant is barred by Rule 5A:18 from arguing on appeal that the offenses were improperly joined.[5]

Under Rule 3A:10(c), "[t]he trial court may, in its discretion, try the [accused] for more than one offense at the same time without his consent only if justice does not require separate trials and the offenses meet the requirements of Rule 3A:6(b)." Spence v. Commonwealth, 12 Va. App. 1040, 1042, 407 S.E.2d 916, 917 (1991). "Under Rule 3A:6(b), two or more offenses may be joined in a single indictment 'if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan.'" Scott v. Commonwealth, ___ Va. ___, ___, ___S.E.2d ___, ___ (Nov. 2, 2007) (quoting Rule 3A:6(b)). "To meet the 'connected' test, the crimes should be 'so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety.'" Spence, 12 Va. App. at 1044, 407 S.E.2d at 918 (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970)). "A reviewing court must look to whether the transactions were 'closely connected in time, place, and means of commission, all of which supports the use of a single trial.'" Yellardy v. Commonwealth, 38 Va. App. 19, 24, 561 S.E.2d 739, 742 (2002) (quoting Satcher v. Commonwealth, 244 Va. 220, 229, 421 S.E.2d 821, 827 (1992)).

"The term 'common scheme' describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes." Scott, ___ Va. at ___, ___ S.E.2d at ___. The determination of "'[w]hether different offenses should be tried separately is a matter that rests within the sound discretion of a trial court,'"

_____

[5] We conclude from the record that appellant clearly made his objection to joinder of the Grassy Creek indictments known to the trial court and that he preserved the issue for our consideration on appeal.

- 4 -

Yellardy, 38 Va. App. at 24, 561 S.E.2d at 742 (quoting Traish v. Commonwealth, 36 Va. App. 114, 129, 549 S.E.2d 5, 12 (2001)), and its ruling will not be reversed absent a showing that it abused its discretion, Ferrell v. Commonwealth, 11 Va. App. 380, 386, 399 S.E.2d 614, 617 (1990).

Here, the record supports the trial court's factual finding that the events at Grassy Creek were "connected" in time, place, and manner, and were sufficiently idiosyncratic to permit an inference that the same person was involved in a "common scheme" of criminal activity involving burglaries, larcenies, and conspiracies to commit each of those offenses. Within a short time span, appellant and a companion approached three residences located in close proximity to each other, employing the same *modus operandi* at each to determine whether they were occupied. In each instance, appellant knocked on the door of a residence and, if anyone answered, appellant asked to speak with a person who did not live there. Appellant and his companion unlawfully entered Miramontes' residence once they determined no one was at home, removed his property from inside, and placed it in the same white Oldsmobile Paz had observed at Menard's residence less than one hour earlier. Although no witness was able to identify the person accompanying appellant, Menard and Silva testified that at least two people were present at their residences, and Paz testified that two people were present at Miramontes' residence. From this record, we conclude that the trial court did not err in determining that the offenses arising out of the March 29 Grassy Creek incidents were "connected" and constituted part of a "common scheme" of criminal activity. See also Cook v. Commonwealth, 7 Va. App. 225, 229, 372 S.E.2d 780, 782 (1988) (joinder appropriate for separate offenses similar in time, scope, geography, *modus operandi*, and involving the same people). Accordingly, we find the trial court did not abuse its discretion in joining the offenses for trial.

Appellant next contends that the trial court erred in failing to grant a mistrial, arguing that the Commonwealth made multiple references during the trial to his involvement in unrelated crimes.

On appeal, a trial court's failure to grant a mistrial on the grounds that the jury heard improper evidence will not be reversed unless "there exists a manifest probability as a matter of law that the improper evidence prejudiced the accused," Mills v. Commonwealth, 24 Va. App. 415, 420, 482 S.E.2d 860, 862 (1997), which happens only when the evidence is "so impressive that it probably remained on the minds of the jury and influenced their verdict," Coffey v. Commonwealth, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949).  Moreover, where a trial court gives cautionary instructions regarding such evidence, "[u]nless the record shows the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given." LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983).

### 1.  Investigator Deeds' Testimony

Appellant argues that the trial court erred in failing to grant a mistrial after Investigator Deeds testified as follows:

> I conducted [] two interviews [with appellant].  On the first interview I had informed [appellant] that I wanted to talk to him about several break-ins at Grassy Creek.  He told me that he did not know where Grassy Creek was.  I proceeded by telling him that there has been some witnesses that have seen him, Raul Guzman and a heavyset individual at Grassy Creek and that he and Raul Guzman were picked out of a photo array.  And he said that he still didn't know what I was talking about.  I explained that a tag number had also been obtained by some witnesses and that it was a white in color Oldsmobile.  And he looked at me and said that he doesn't know why f**** people see him.

Following that testimony, appellant immediately moved for a mistrial, arguing Deeds' testimony referred to offenses other than those for which he was on trial.  The trial court denied

appellant's motion and asked Deeds to limit her testimony to the Grassy Creek offenses. The prosecutor then asked Deeds whether appellant's statement was made when he was being questioned about Grassy Creek. When Deeds answered, "[i]t was in the same interview [but] [i]t was about another location[,]" appellant again moved for mistrial. The trial court deferred its ruling until the conclusion of Deeds' testimony. It then denied appellant's motion stating, "[i]t wasn't extremely blatant and I don't feel it merits a mistrial." The trial court instructed the jury to disregard and not to consider any comments Deeds may have made regarding incidents other than those for which appellant was being tried. We find no error in the trial court's denial of appellant's motion for mistrial.

## 2. Deputy Michael's Testimony

Appellant also asserts that the trial court erred in failing to grant his motion for mistrial when the Commonwealth impermissibly informed the jury that there was more than one breaking and entering. During his redirect examination, the prosecutor asked Deputy Michael, "what steps did the sheriff's department take to make the public aware of these breaking and enterings?" Appellant objected to the question arguing that it was not relevant and called for a hearsay response. After a brief bench conference out of the hearing of the jury, the trial court ruled that the prosecutor's question was out of order as it exceeded the scope of cross-examination. Immediately following the bench conference, and out of the hearing of the jury, appellant's counsel told the prosecutor that he used the plural "breaking and enterings" in his previous question. The Commonwealth then stated to the trial court and in the jury's presence, "[y]our Honor, it's been brought to my attention that I mentioned burglaries in the plural and obviously there's only one actual B&E. I just wanted to clarify that." The court responded, "[f]or the record there is only one breaking and entering offense charge." Appellant did not contemporaneously object or seek a mistrial following these statements. We find no

- 7 -

error on the part of the trial court for failing to *sua sponte* grant a mistrial under these circumstances.

### 3. Commonwealth's Closing Arguments

Appellant also argues that the trial court erred in denying his motion for mistrial when the prosecutor in his closing argument to the jury stated,

> [w]hat does [appellant] say when Investigator Deeds says why are people picking you out of a lineup with respect to Grassy Creek, you've got Ms. Menard and Jeremy Paz essentially picking you out, and what does he say? I don't know why people see me. I never had anything to do with that. I don't know where Grassy Creek is. I never had a Play Station.[6]

From our review of the prosecutor's closing argument, we find nothing in his comments to suggest appellant's involvement in other offenses. Accordingly, we find no error on the part of the trial court in denying appellant's motion for mistrial based on the prosecutor's closing argument.

We conclude from the record that there was no "manifest probability" that any of the instances on which appellant sought mistrial, individually or collectively, prejudiced the accused, or that the jury failed to follow the trial court's cautionary instructions that it disregard any reference to the existence of offenses other than those being tried. The trial court did not abuse its discretion in denying each of appellant's motions for mistrial, and, therefore, we affirm the trial court's rulings.

### C. Hearsay

Appellant argues that the trial court erred in admitting Deputy Michael's testimony concerning the registration of the white Oldsmobile that Paz and his companion observed at the

---

[6] Among the items taken from Miramontes' residence were a green card, social security card, Virginia identification card, jewelry, cash, DVDs, CDs, and a PlayStation. Appellant "pawned" a PlayStation for cash shortly after he was seen removing property from Miramontes' residence.

Menard and Miramontes residences on March 29. He contends that Deputy Michael's testimony was inadmissible hearsay as the DMV records were obtained using second-hand information Bryant received from Paz and Mendez.[7]

"'Hearsay evidence is testimony . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting [] its value upon the credibility of the out-of-court asserter.'" Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (quoting McCormick on Evidence § 246, at 54 (2d ed. 1972)). The trial court determined that Deputy Michael's testimony concerning the actions he took based on information he received from Bryant was not hearsay, as it was not offered to prove the truth of the matter asserted, but rather to explain his conduct after he received the report of a possible burglary involving a white car. See Hamm v. Commonwealth, 16 Va. App. 150, 156, 428 S.E.2d 517, 521 (1993) (statement offered to explain declarant's conduct or that of person to whom statement was made, not objectionable hearsay).

Because other competent evidence connected appellant to the white Oldsmobile Paz saw at Miramontes' house, we need not address whether the trial court erred in ruling that Deputy Michael's testimony regarding the registration of the car was not hearsay. See Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979) (admission of hearsay testimony harmless error when content of extrajudicial statement established by other competent evidence). Olivencia, the mother of appellant's child, testified that the white car belonged to her mother, Mirabelle Bramble, and that appellant had ready access to the keys because she, appellant, and their child were living with Bramble at the time of the Grassy Creek offenses. Additionally, Paz identified appellant as the man he saw removing items from Miramontes' home and placing them

---

[7] Deputy Michael testified that his inquiry to DMV revealed that the license plate number he received from Bryant was registered to a white Oldsmobile owned by Mirabelle Bramble.

into the white Oldsmobile.  He also identified the same white Oldsmobile the next day at a local park.  Relying on this "other competent evidence," any error in the trial court's admitting Deputy Michael's testimony that the white Oldsmobile was registered to Bramble was, at best, harmless error.  Id.

### D.  Sufficiency of the Evidence

Appellant next argues that the Commonwealth's evidence failed to prove the "breaking" element necessary to sustain his conviction of burglary of Miramontes' residence under Code § 18.2-91.  He also argues that because the Commonwealth failed to prove he intended to commit burglary or larceny of Miramontes' or Menard's property, the evidence was insufficient to convict him of conspiracy to commit burglary and conspiracy to commit grand larceny.

"Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom."  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  "'When a case, civil or criminal, is tried by a jury . . . the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'"  Charity v. Commonwealth, 49 Va. App. 581, 585, 643 S.E.2d 503, 505 (2007) (quoting Code § 8.01-680).  "[T]he relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

### 1.  Burglary

Appellant argues that the evidence failed to establish that he broke into Miramontes' residence.  He asserts that the Commonwealth's evidence did not dispel the reasonable hypothesis of innocence that the last person who left Miramontes' home before the theft on

March 29 left the door open. Appellant fails, however, to exclude the reasonable inference that he applied some force, however slight, to gain entry into Miramontes' residence, a reasonable inference that the properly instructed jury found in order to return its guilty verdict on the burglary charge.[8]

"To sustain a conviction for statutory burglary under Code § 18.2-91, the Commonwealth must prove: (1) the accused . . . broke and entered the dwelling house in the daytime; and (2) the accused entered with the intent to commit any felony other than murder, rape, robbery or arson." Robertson v. Commonwealth, 31 Va. App. 814, 820-21, 525 S.E.2d 640, 644 (2000) (citing Code §§ 18.2-90, 18.2-91). "Breaking, as an element of the crime of burglary, may be either actual or constructive." Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922).

> Actual breaking involves the application of some force, *slight though it may be*, *whereby the entrance is effected. Merely pushing open a door*, turning the key, lifting the latch, or *resort to other slight physical force is sufficient to constitute this element of the crime*. But a breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the house.

Id. (citations omitted) (emphasis added).

In determining whether the Commonwealth proved all of the elements of burglary, "'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every *reasonable* hypothesis of innocence.'" Hamilton v. Commonwealth, 16 Va. App. 751, 755, 733 S.E.2d 27, 29 (1993) (quoting Boothe v. Commonwealth, 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987)) (emphasis added). "It is 'within the province of the jury to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts.'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d

---

[8] Instruction 11 given by the trial court to the jury, without objection, reads: "Breaking, as used in these instructions, is the use of some force, however slight, to gain entry."

781, 786 (2003) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976)). We "must determine not whether there is some evidence to support [appellant's] hypothesis of innocence but, rather, whether a reasonable fact finder, upon consideration of all the evidence, could have rejected appellant's theories and found him guilty beyond a reasonable doubt." Corbin v. Commonwealth, 44 Va. App. 196, 202, 604 S.E.2d 111, 114 (2004). "Whether a hypothesis of innocence is reasonable is a question of fact." Id. at 203, 604 S.E.2d at 114.

When Miramontes left for work at approximately 4:00 a.m. on March 29, he closed the door of his home. Although Miramontes testified that his "wife and children leaves after myself[,]" the record is silent as to when the other occupants may have left, or whether they left the door completely or partially open or closed.

Appellant's hypothesis of innocence required the jury to find that Miramontes' family members left the residence before he arrived and that they left the entrance open permitting him to simply walk in through a fully opened door. Although no signs of forced entry were found around the door or windows immediately after the burglary was detected, the evidence established appellant and his companion had no lawful authority to enter Miramontes' residence, and when Detective Michael arrived, he described the interior of the residence as "ransacked." The jury, consistent with the instruction it was given, rejected appellant's hypothesis, finding that he applied some force, however slight, to gain entry into Miramontes' residence. On this record, we cannot say that the fact finder's rejection of appellant's hypothesis of innocence was unreasonable. For these reasons, we affirm the judgment of the trial court that the evidence was sufficient from which the jury could reasonably find that appellant "broke" into Miramontes' residence in order to steal his property, and sufficient to establish that he was guilty of burglary.

## 2. Conspiracy to Commit Burglary and Grand Larceny

Appellant also contends that the evidence in the record is not sufficient to support his convictions of conspiracy to commit burglary and to commit grand larceny of both Menard's and Miramontes' property. He contends that his "innocent action" of knocking on Menard's door and asking to speak to someone can only be considered criminal if bootstrapped to an alleged burglary that occurred "on the opposite end of the trailer park" at Miramontes' house.[9] He also contends that the Commonwealth failed to establish the identity of the person with whom he conspired and, without doing so, the Commonwealth cannot establish that he conspired with another to commit either burglary or grand larceny.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). "The Commonwealth may prove the existence of a conspiratorial agreement by circumstantial evidence and need not prove an explicit agreement." Gray v. Commonwealth, 30 Va. App. 725, 736, 519 S.E.2d 825, 830 (1999), aff'd, 260 Va. 675, 537 S.E.2d 862 (2000). Thus, "a conspiracy may be inferred from the overt actions of the parties . . . ." McQuinn v. Commonwealth, 19 Va. App. 418, 425, 451 S.E.2d 704, 708 (1994).

> Where it is shown that the [accused] by their acts pursued the same object, one performing one part and the other performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object.

---

[9] Appellant also contends that the trial court erred in convicting him of conspiracy to commit burglary of Miramontes' home because "the Commonwealth cannot prove the object felony of burglary." Appellant cites no authority for this proposition and failing to do so, he has not complied with the provisions of Rule 5A:20(e). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Accordingly, we will not consider this claim of error on appeal.

Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d Conspiracy § 42 (1979)). "[T]he crime of conspiracy is complete when the parties agree to commit an offense." Gray v. Commonwealth , 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000). "In Virginia, no overt act in furtherance of the underlying crime is necessary." Id.

From the evidence presented, a reasonable fact finder could conclude that appellant and his companion agreed to commit burglary and grand larceny of Miramontes' and Menard's property. Appellant's act of knocking on doors of the residences, while his companion operated as a lookout, was evidence from which the jury could reasonably find the existence of a common plan, agreed to by appellant and his companion, to break into residences after determining the targeted residences were not occupied, and to steal property from within. See McQuinn, 19 Va. App. at 425, 451 S.E.2d at 708 (jury entitled to infer existence of common purpose or plan from development and collection of circumstances). Menard's presence in her residence, thereby disrupting appellant's plan to commit burglary and grand larceny there, did not relieve appellant of criminal liability for conspiracy to commit burglary and grand larceny there, as the conspiracy was complete when appellant formed the agreement with his companion to unlawfully enter and take property from the targeted residences. Gray, 260 Va. at 680, 537 S.E.2d at 865. Moreover, Paz's testimony that one man was carrying out a PlayStation while "the other guy [] was carrying a pillow case like Santa Claus on his back," each placing the items into the white Oldsmobile, provides further evidence that appellant and his companion acted in accordance with a plan created before the burglary took place.

Appellant's assertion that the Commonwealth failed to prove the existence of a conspiracy to commit burglary and grand larceny because the Commonwealth failed to establish the identity of appellant's co-conspirator is also without merit. The conspiracy was complete the moment the agreement to commit burglary and grand larceny was entered into between appellant

and another person.  Heacock v. Commonwealth, 228 Va. 397, 407, 323 S.E.2d 90, 96 (1984).

The Commonwealth was not required to establish the identity of appellant's co-conspirator

because "the law rightly gives room for allowing the conviction of those discovered upon

showing sufficiently the essential nature of the plan and their connections with it, without

requiring evidence of knowledge of all of its details, or of the participation of others."

Blumenthal v. United States, 332 U.S. 539, 557 (1947).  The jury could reasonably conclude

from the evidence it received that appellant and his companion worked together to break and

enter residences in Grassy Creek and to commit larceny of the property they found within.

Accordingly, we conclude that the evidence was sufficient for a rational jury to find that

appellant and another person conspired to burglarize the Menard and Miramontes residences and

to commit larceny of the property within those structures.

## III.  CONCLUSION

We conclude that the trial court did not err in joining the several Grassy Creek offenses

for trial.  We also conclude that the trial court did not err in denying appellant's motions for

mistrial based upon Investigator Deeds' incidental comments relating to offenses other than

those for which appellant was on trial, the statements of the prosecutor and trial court that there

was only one charge of breaking and entering, and the allegation that the prosecutor's closing

argument referred to appellant's involvement in offenses other than those for which he was on

trial.

We also conclude that any error on the part of the trial court in admitting Deputy

Michael's testimony that the white Oldsmobile Paz observed at Menard's and Miramontes'

residences was registered to a person with whom appellant lived was harmless, as other

competent evidence connected appellant to that car.  Finally, we conclude that there was

sufficient evidence from which a reasonable jury could find that appellant was guilty of burglary

of Miramontes' residence, conspiracy to commit burglary, and conspiracy to commit grand larceny of Miramontes' and Menard's property.  Accordingly, we affirm each of appellant's convictions.

<u>Affirmed.</u>