COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Willis


DANIEL MESSIHA
                                                    MEMORANDUM OPINION[*]
v.        Record No. 1477-08-4                           PER CURIAM
                                                    JANUARY 27, 2009
ALEXANDRIA DEPARTMENT
  OF HUMAN SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            Lisa B. Kemler, Judge

          (Douglas A. Steinberg, on brief), for appellant.  Appellant
          submitting on brief.

          (Richard F. Gibbons, Jr.; Thomas K. Cullen, Guardian *ad litem* for
          the infant child, on brief), for appellee.  Appellee and Guardian
          a*d litem* submitting on brief.


       Daniel Messiha appeals the termination of his residual parental rights to his child, J.M.,

pursuant to Code § 16.1-283(C)(2).  Messiha argues that the trial court committed reversible

error by admitting certain hearsay testimony and that the evidence was insufficient to warrant

termination of his parental rights.  We disagree, and affirm the judgment of the trial court.

                                      Background

       On appeal, "[w]e view the evidence in the 'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409

S.E.2d 460, 463 (1991)).

_____
       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, J.M. was born on May 15, 2006 to father and Katherine Senia Messiha. The Alexandria Department of Human Services (ADHS) removed him less than two months later on a charge of abuse or neglect after he suffered two broken ribs. Although the Alexandria Juvenile and Domestic Relations District Court (JDR court) found the abuse and neglect charge was grounded, it returned J.M. to his parents on August 25, 2006, subject to a protective order.

ADHS appealed the decision to circuit court. On October 30, 2006, the circuit court ordered that J.M. be placed in the home of his maternal grandparents. This placement was subject to several conditions. Mother was required to reside with the child and the maternal grandparents and to attend all visitation between father and child. Father was also required to complete anger management class, undergo a mental health evaluation, and to be interviewed for admission into the Alexandria Family Drug Court. Upon admission into the Family Drug Court, father was required to complete the program successfully. Both parents were ordered to continue the services authorized by ADHS.

On September 25, 2006, ADHS began to administer home-based services to both parents. On October 27, 2006, while home-based social workers were present, police arrested father on drug charges and searched his home. Mother told police father had conducted a drug sale on October 18, 2006, while she and J.M. were in the car with father.

Father completed an anger management program on December 12, 2006, but, shortly thereafter, began making himself "completely unavailable for services." He stated "he no longer wanted anything to do with Social Services and just wanted Social Services out of his life." On December 20, 2006, J.M.'s guardian *ad litem* obtained a court order prohibiting father from taking J.M. to father's apartment because the apartment presented a risk to the child's health and well-being.

In March 2007, social worker Veronica Soler began working with the family. J.M.'s mother told Soler father had been physically violent with her. Soler photographed bruises on mother's arm and encouraged her to obtain a protective order. Mother refused to testify against father, however, and the charges against father were not pursued.

Following this incident, ADHS referred father to a more intensive anger management program than the one he had completed in December 2006. The program refused to accept father because father had not addressed his mental health issues. Father, who had been previously diagnosed with bipolar disorder, had been referred by ADHS to a mental health therapist, but the therapist discharged him after ten sessions because father was uncooperative.

In May 2007, father and mother reconciled. Soler knew the parents lived in Fairfax, but their address was unknown. The parents kept J.M. with them during the day and returned him to his grandparents at night. On May 17, 2007, J.M. was removed from the custody of his maternal grandparents pursuant to an emergency removal order. J.M.'s guardian *ad litem* sought the order because mother had stopped taking her medication for anxiety and depression, had reunited with father, and was taking the child to father's address and other undisclosed locations until 10:30 p.m. The grandparents, Mr. and Mrs. Senia, described the parents' behavior as "unpredictable" and noted the parents could come to the home at any time and take the child. Mrs. Senia feared father and felt J.M. would be safe only in a foster home. On June 19, 2007, the juvenile court found J.M. at risk of abuse and neglect and ordered removal.

Prior to the first supervised visitation between father and J.M., father advised Soler he had moved to Arlington to an apartment he was sharing with approximately five other individuals. Father gave no explanation for the move except to state "they had to leave." When Soler informed father criminal background checks would be required on the individuals in

father's apartment before J.M. could be returned, father became angry and asserted such an investigation was "an invasion of privacy."

Approximately one month later, father and mother moved from Arlington to Fredericksburg to stay with "a friend of a friend." Within two or three months, they were homeless.

On October 12, 2007, ADHS filed a foster care service plan changing the goal to adoption. When Soler informed father the goal was being changed, father told Soler "the Agency and the social worker were . . . liars." At that time, father was living with his mother and attempting to obtain placement in a local shelter.

In November 2007, father was incarcerated following his convictions on drug distribution charges. He was released in February 2008. In December 2007, Soler visited father's parents for the purpose of determining whether they would be a suitable placement for J.M. After the visit, Soler concluded that the paternal grandmother's age and poor health rendered her unable to take care of J.M. Shortly thereafter, J.M.'s paternal grandfather and aunt informed Soler they were not interested in assuming custody of J.M.

On March 3, 2008, the juvenile court terminated the parental rights of both father and mother. Father appealed the juvenile court's decision to circuit court. At the time of the termination hearing in June 2008, father was neither employed nor had stable housing. He was living with his mother. To Soler's knowledge, father was employed for only one month from May 2007 until the termination hearing in June 2008. Father testified at the termination hearing. He acknowledged he had sought no further treatment for his mental condition until the day prior to the hearing. He also stated his unwillingness to take medication for his condition.

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2) and approved the foster care plan with the goal of adoption.

<u>Analysis</u>

I.

Father argues the trial court erred in admitting certain testimony from social worker Jennifer Cann. Cann testified that the child was removed due to concerns about father's drug use, sale of drugs in the home, and domestic violence. Father maintains this testimony was inadmissible hearsay.[1]

The trial court overruled father's hearsay objection and stated it was not accepting the testimony "for the truth of the matter that he was distributing drugs or doing certain things." Instead, the trial court admitted the testimony for the purpose of establishing "what issues [social services] sought to address with him and whether he complied with the Court order to cooperate with Social Services."

Assuming without deciding the trial court erred in admitting this testimony, such error was harmless. "'Even though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial declaration is clearly established by other competent evidence.'" <u>Fields v. Dinwiddie Dep't of Soc. Servs.</u>, 46 Va. App. 1, 10-11, 614 S.E.2d 656, 660 (1995) (quoting <u>Schindel v. Commonwealth</u>, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979)). Here, the content of the challenged statements was contained in the October 12, 2007 foster care service plan entered into evidence as Exhibit 10, evidence whose admission stands uncontested on appeal. Likewise, the court admitted testimony that father was incarcerated from November

_____

[1] Father also asserts that the admission of this testimony violated his Sixth Amendment rights under the Confrontation Clause and deprived him of his due process right to a "fundamentally fair procedure." As these arguments were not included in the Questions Presented as required by Rule 5A:20, however, these issues are waived. <u>See</u> <u>Jay v. Commonwealth</u>, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008); <u>Hillcrest Manor Nursing Home v. Underwood</u>, 35 Va App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001).

2007 until February 2008 for drug distribution convictions. Accordingly, any error in the admission of Cann's testimony was harmless.

II.

Father also asserts the evidence was insufficient to support the trial court's approval of the permanency planning order with the goal of adoption and termination of father's residual parental rights. He also contends that termination was not warranted because ADHS failed to establish it had adequately investigated J.M.'s placement with J.M.'s paternal aunt or father's "mentor."

In reviewing a decision to terminate a parent's residual parental rights, we are mindful that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action,'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (citation omitted), but presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests,'" Fields, 46 Va. App. at 7, 614 S.E.2d at 659 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

The trial court terminated father's parental rights under Code § 16.1-283(C)(2). That section provides that termination is warranted if clear and convincing evidence establishes it is in the best interests of the child and that

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve

months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Father does not argue that he substantially corrected or eliminated the conditions which led to the child's placement. He merely contends that he "pursued numerous services independent of Alexandria DHS."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). At the time of the hearing, J.M. was two years old and had been either in the care of his grandparents or foster care for most of his life. Not only had father failed to secure stable housing or employment during that time, he had refused mental health therapy or medication despite the knowledge he suffered from bipolar disorder and anger management issues. In addition, father had been incarcerated for several months after being convicted for drug distribution. While father's incarceration, *per se*, did not warrant the termination of his parental rights, it was "a valid and proper circumstance" the trial court could consider in deciding whether termination was in J.M.'s best interests. See Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). Furthermore, from the time father was incarcerated in November 2007 until the termination hearing in June 2008, he saw J.M. on only three occasions.

The record supports the trial court's finding that ADHS presented clear and convincing evidence that father, without good cause, failed to remedy substantially the conditions which led to J.M.'s removal within a reasonable time, despite reasonable and appropriate efforts by ADHS.

- 7 -

Father also asserts the evidence was insufficient to warrant termination of his parental rights because ADHS failed to prove that it had discharged its duty to investigate placement with father's sister or his mentor, Dr. Ibrahim Barsone.

Prior to seeking termination of father's parental rights, ADHS had "an affirmative duty to investigate all reasonable options for placement with *immediate* relatives." Sauer v. Franklin County Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994) (citations omitted) (emphasis added). It was required to "produce sufficient evidence [for] . . . the court [to] . . . properly determine whether there [we]re relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

ADHS investigated father's sister and his parents as potential placements for J.M. and determined them to be unsuitable or unwilling to care for him. The sister did not attend the hearing, and no evidence independent of father's testimony suggested her willingness to be considered.

As to Dr. Barsone, ADHS had no duty to investigate him as a possible placement because he was not a member of father's family.

Accordingly, ADHS presented sufficient evidence it investigated all reasonable options for placing J.M. with family members prior to seeking termination of father's parental rights.

### Conclusion

For the reasons stated above, we conclude that any error in the admission of Cann's testimony was harmless. We also conclude that ADHS presented sufficient evidence to support

- 8 -

the trial court's termination of father's residual parental rights pursuant to Code § 16.1-283(C)(2) and its approval of a foster care plan with a goal of adoption for J.M.[2]

Affirmed.

---

[2] "Our decision to affirm the termination order necessarily subsumes this aspect of [his] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3 (citing Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 497, 507 S.E.2d 87, 88 (1998); Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996)).